# WILLIAM McCLUNG v. GEORGE E. DEARBORNE.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued April 1, 1890—Decided April 28, 1890.
[To be reported.]

1. While not liable for the wilful and independent trespass of his servant, a master is responsible civilly for the manner in which the servant does the work that he is employed to do, and it is the character of the employment when an act is done, not the private instructions to the servant, by which the master's liability is to be determined.

2. Where a master, claiming ownership of an organ in the possession of another, sent his servants to the house where the organ was, to take possession of it himself, and the servants entered and took the organ by force and violence, the master was liable for their trespass, although in committing it they violated his express instructions.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 171 January Term 1890, Sup. Ct.; court below, No. 755 December Term 1886, C. P. No. 4.

On December 31, 1886, William McClung brought trespass against George E. Dearborne, and subsequently filed a statement of claim averring that the defendant by his agents, one A. B. Fox, alias Bastian, and two colored men whose names were unknown to the plaintiff, said agents acting in the premises by order and instruction of the defendant, took and entered the plaintiff's dwelling on or about October 11, 1886, forcibly removed therefrom a cabinet organ of the plaintiff, and assaulted, beat and kicked the plaintiff's wife, etc., whereby the plaintiff was damaged in the sum of $10,000, etc. Issue.

At the trial on May 22, 1889, the following facts were shown:

In December, 1884, the plaintiff and his wife purchased from one Mrs. Hamilton a cabinet organ for $35, which thereafter remained in their home until the occurrence complained of in this action. On October 9, 1886, one Fox came to the plaintiff's house, introduced himself as Mr. Bastian of the Athletic Base-ball Club, and on pretence of wishing to see a young

Statement of Facts.

man who roomed in the house, to engage him as a base-ball player, obtained admission to the parlor, and while there examined the organ and ascertained its number.

Fox was an employee of the defendant, who was a dealer in pianos and organs doing business at 1508 Chestnut street, Philadelphia. The defendant sold instruments upon the instalment plan, reserving the title until the price should be paid and making the contract in the form of a lease to the purchaser, and employed Fox to hunt up and recover instruments, so sold, upon which the purchasers had failed to make the stipulated payments.

Fox reported to the defendant the number of the organ at the plaintiff's house, and it was found to be one which the defendant had delivered to Mrs. Hamilton on trial, with an agreement that if she was pleased with it she was to execute a lease contract, providing for the payment of $125 for it in monthly instalments of $5. The defendant, however, had lost trace of the organ, Mrs. Hamilton having moved away without executing the lease.

On the morning of October 11, 1886, the defendant sent Fox and two colored men named Lamont and Black, with a wagon, to the plaintiff's house to get the organ. Arriving at the house, Fox left the other men in the street, went to the door and inquired for Mrs. McClung, engaged her in conversation about the young man whom he had asked for on his previous visit, and finally announced his intention of taking away the organ. The testimony for the plaintiff tended to show that in spite of the protests and resistance of Mrs. McClung and her children, Fox and his companions forced their way into the parlor, removed the organ therefrom, and put it into the wagon; that when his authority for so doing was demanded by the plaintiff's son, Fox's reply was a threat to shoot the son if the latter interfered with his business, accompanied by a feint of drawing a pistol from his hip pocket; that, in effecting his purpose, Fox violently assaulted both Mrs. McClung and her son, inflicting injuries upon the former by kicking her, slamming her against the wall, striking her on the breast, and knocking her about; that the plaintiff's daughter went after a policeman, to have the men arrested, and the policemen arriving just as the men were starting away from the house with the organ,

Fox persuaded him to arrest the plaintiff's son, which he did. A part of the testimony describing the scene is quoted in the opinion of the Supreme Court, infra.

The defendant testified, on his own behalf, that before sending Fox for the organ, he had given him explicit instructions to go about the business in a proper manner and to be careful not to have any row about it, but if he could get the organ without any trouble, to get it. Lamont testified for the defendant that the latter told Fox, before they started after the organ, to get it peaceably if he could, but, if he could not get it peaceably, not to bother with it; and Black testified that the instructions were to get it as peaceably as possible, and not to have any assault and battery or any disturbance whatever. The testimony of Lamont and Black tended to contradict in some particulars the testimony for the plaintiff as to the use of force.

At the close of the testimony, the court, THAYER, P. J., charged the jury as follows:

There can be no doubt, if you believe the evidence, that the conduct of Mr. Fox, in this transaction, was entirely unjustifiable; that he was guilty of a very high-handed and unjustifiable outrage, and one for which he might have been severely dealt with, if arrested, and subjected to the proper punishment. His conduct on this occasion was without mitigation and deserving of the severest condemnation; but, at the same time, the real question in this case, is not as to the conduct of Mr. Fox alone, but as to whether Mr. Dearborne is responsible for it. That is the question in the case. Of course, Mr. Dearborne is not to be punished for Mr. Fox's bad conduct, or his outrages, or outrages perpetrated by him in depriving these plaintiffs of their rights, unless he is responsible for it; unless the circumstances make him responsible for it.

[Now, whether he, the defendant, is responsible for it or not, depends upon the instructions given by him to Mr. Fox. If the meaning of the instructions given to Mr. Fox was that he was only to proceed to get the organ, provided he could do so peaceably and with the consent of the parties in whose possession the organ was at the time; if that was the whole scope of the authority or order given by Mr. Dearborne, then Mr. Dearborne would not be responsible for the wanton misconduct

of the agent in the carrying out of his order. That is the well-settled law of this state in relation to the question of master and servant.] [6]

[In trespass, to use a familiar expression of lawyers, all are principals who join in the trespass, whether by effecting it or by participating in it; and, if Mr. Dearborne is to be held responsible here, his liability does not arise from the fact of Mr. Fox being his servant, but because he gave Mr. Fox orders to commit the trespass. If he did direct Mr. Fox to do that, he is just as much responsible for the trespass as if he had gone down there and taken the organ out by his own hands. But if he directed Mr. Fox to get the organ in a manner that depended upon the consent of the parties in whose possession it was, if the direction contemplated no violence or misconduct, then the defendant is not responsible for the misconduct or tortious behavior of Mr. Fox, although Mr. Fox was his servant.] [7] . . . . .

Something has been said to the effect that, if we were to look on everything in this light, that if the master were not responsible for the conduct of his servant in carrying out his orders, parties aggrieved would be without redress. Why, if you were to be held responsible for all the tortious acts of your employees, although you gave them no instructions contemplating such acts, who could stand such an amount of responsibility? The law is not so; the law is that every man shall be responsible in trespass for what he does or says, and the master is not responsible unless he consented to the trespass of his servant.

Now, this is an action of trespass. If you read the plaintiff's statement or declaration, you will see that the whole thing hinges on the allegation that the defendant authorized the trespass; and, unless you find that to be the fact, you cannot hold this defendant responsible. This is not a question of the negligence of the servant, and that question does not arise in this case. He cannot be held for anything but the action of the trespass or having participated in it; so that you see it is within very narrow limits that this question is confined.

[If Mr. Fox's orders were only to get the organ by peaceable means, and only to carry it away with the consent of the people who had it in their possession, then it is both common

Charge of Court below.

sense and law that Mr. Dearborne should not be held responsible for Mr. Fox's misconduct in violation of those orders. Mr. Fox undertook to take the organ ; and, in attempting to get it away, did certain things which were in violation of the law ; and Mr. Dearborne is not to be held responsible for the violent acts of Mr. Fox, if his directions to Mr. Fox contemplated taking the organ by quiet, peaceable means, only, and with the consent of the parties in whose possession it was. If, however, you find that the defendant was responsible for this misconduct, then you are to give damages to the plaintiff. If you find that Mr. Fox did this of his own head and without any instructions from the defendant, then you are to find your verdict for the defendant.] [8]

The plaintiff requests the court to charge :

1. A master is responsible for the misconduct of his servant in the discharge of the functions committed to him by the master, notwithstanding the fact that the orders given by the master were proper and contemplated only a proper execution of them on the part of the servant.

Answer : I refuse that point. He is not responsible for a wilful and malicious trespass committed by his servant without his authority or consent. This is the law.[1]

2. The master's orders to his servant to be cautious or careful cannot relieve him from responsibility. On the contrary, if in the performance of the duties which the master employs the servant to do, the servant does an act in furtherance of that employment, ill-advised, malicious and wanton, the master is responsible, although done contrary to the master's will, against his instructions and without his knowledge.

Answer : Refused.[2]

3. The rule that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent or deceitful. If it be done in the course of his employment, the master is liable, and it makes no difference that the master did not authorize or even know of the servant's acts or neglect, or even if he disapproved or forbade it, he is equally liable if the act be done in the course of his servant's employment.

Answer : Refused.[3]

Opinion of Court below.

4. The question of the ownership of the organ, in this case, has nothing to do with determining the liability of the defendant. If the jury believe that the defendant instructed and employed his servant to get the organ from the premises, 1436 South Sixteenth street, and they in furtherance of that employment entered the dwelling-house of the plaintiff against his consent, and with force, and assaulted Mrs. McClung, the defendant is liable for such forcible entry and for such assault, and your verdict must be for the plaintiff.

Answer: That depends, gentlemen, upon the nature of the instructions given by the defendant. If those instructions implied that the men should bring the organ away at all hazards, that is, whether the person in possession consented or not; if he did that, then the defendant would be liable for the trespass; if, on the other hand, the instructions were to get the organ, if they could do it peaceably, that is, with the consent of the persons in possession, and if Fox violated his instructions in that respect, and of his own will committed any trespass on the plaintiff, defendant would not be responsible for that. The defendant is responsible only for any trespass which he ordered. This is only a reiteration of what I have already said in my general charge.[4]

5. It was the duty of the defendant, upon learning of the tortious acts committed by his servant, to promptly disavow the same, and make such reparation to plaintiff as was possible under the circumstances of the case; and, if the jury believe that the defendant, with knowledge of the tortious acts that his servant had committed, subsequently ratified their acts and availed himself of the benefits thereof, he became liable for the same as though the act had been originally authorized by him, and your verdict must be for the plaintiff.

Answer: Refused.[5]

The jury returned a verdict in favor of the defendant. A rule for a new trial having been argued, an opinion was filed, Thayer, P. J., which in part was as follows:

A doctrine so old and long settled as this, and so frequently recognized in the decisions of the Supreme Court of this state can hardly be successfully challenged at this time of day. How can it be said with any plausibility that the servant here was

acting within the scope of his authority in committing this trespass, when it was committed wholly in violation of the authority given to him, when he did something which the master expressly ordered him not to do?  "How can a man be said to order or authorize a trespass who expressly forbids it?  The rule laid down by Judge STRONG in Yerger v. Warren, 31 Pa. 319, is now and always has been the law.  The acts of a servant bind the master only when done in the course of the business committed to him, or within the scope of an authority specially delegated: Kerns v. Piper, 4 W. 222.  How can the act of Fox be said to be within the scope of an authority which was delegated to him, when he did that which he was commanded not to do? Snodgrass v. Bradley, 2 Gr. 43, is in line with Yerger v. Warren and Kerns v. Piper, and so are Allegheny V. R. Co. v. McLain, 91 Pa. 442; Philadelphia etc. R. Co. v. Wilt, 4 Wh. 143, and Penna. Co. v. Toomey, 91 Pa. 256.

A master is never liable for the wilful trespasses of his servant.  See Judge SHARSWOOD's note, 1 Shars. Bl. Com., *431, n. 19, and the ancient cases there cited, an authority which the plaintiff seems to rely upon for his contrary proposition.  Chancellor KENT lays down the same rule, placing much stress upon the decision in McManus v. Crickett, 1 East 106, where the King's Bench went into an examination of all the authorities, and, after much discussion and great consideration with a view to put the question at rest, decided that the master is not liable in trespass for the wilful act of the servant.  The court considered that when the servant quitted sight of the object for which he was employed, and without having in view his master's orders, pursued the object which his own malice suggested, he no longer acted in pursuance of the authority given him, and it was deemed so far a wilful abandonment of his master's business: 2 Kent Com., *259, *260.  And this case, he points out, has received the sanction of the Supreme Courts of New York and Massachusetts, "on the ground that there was no authority from the master, express or implied, and the servant in that act was not in the employment of his master: 19 Wend. 343; 17 Mass. 508."

But there seems to be little necessity to resort to the decisions of other tribunals when those of our own are so conclusive. The mistake of the plaintiff lies in supposing that the defend

ant is responsible for the wilful trespass committed by Fox, because he was in the general employment of the defendant in matters which in no way related to such acts as those complained of. What Fox did, was not in the course of his general employment, but quite outside of it; and, in doing it, so far from obeying the defendant's special orders, or acting under his directions, he committed the trespass of his own head, and in flagrant disobedience of the defendant's commands. As the defendant was in no wise privy to the trespass, or responsible for it, I cannot see that his neglect to return to the plaintiff his own property, which had been gotten from him by fraud, can make him responsible as a trespasser: see North v. Williams, 120 Pa. 109.

Judgment having been entered on the verdict, the plaintiff took this appeal assigning for error:

1–5. The answers to plaintiff's points. [1 to 5].

6–8. The parts of the charge embraced in [ ] [6 to 8]

*Mr. Peter Boyd,* for the appellant:

1. A master is ordinarily liable civilly for the tortious or wrongful acts of his servants, done in the course of their employment in his service: Smith on M. & S., 183; Penna. R. Co. v. Vandiver, 42 Pa. 365; Phila. Traction Co. v. Orbann, 119 Pa. 37; Drew v. Peer, 93 Pa. 234. The test of this liability is, not the instructions given to the servant, but the purpose of the employment: Bruce v. Reed, 104 Pa. 408; 1 Shars. Bl. Com., 431, note 1; 2 Kent. Com., 260, note 1 (*b*); Phila. etc. R. Co. v. Derby, 14 How. 468; Phil. etc. R. Co. v. Brannen, 17 W. N. 227; Wood on M. & S., §§ 283, 293, 303; Heinrich v. Pullman, 23 Am. L. Reg., N. S., 459; Cooley on Torts, 539. And the master may become liable by a subsequent ratification of a tortious act done for his benefit, as though it had been originally authorized by him: Wood on M. & S., § 310; Wharton on Negligence, § 157; Heinrich v. Pullman, supra.

2. The court erred in treating this as a technical action of trespass vi et armis. The cases relied on by the defendant, Yerger v. Warren, 31 Pa. 319, and Allegheny etc. R. Co. v. McLain, 91 Pa. 442, were actions in that form and seem to

Opinion of the Court.

have been decided upon that ground: See remarks of Mr. Justice STERRETT in Drew v. Peer, 93 Pa. 234. The case last mentioned expressly rules that the master is liable in case for acts of violence by a servant in the ordinary course of his employment. The writ in this case was a summons in trespass on the case, issued before the Procedure Act of May 1887, P. L. 271. The statement of claim was filed after the passage of that act. If the master was liable in case, the technical form of the statement under the act of 1887 is immaterial: Short v. Messenger, 126 Pa. 637. The court erred in assuming that the organ belonged to the defendant. Under the circumstances, the plaintiff was justified in treating it as his own, until demand was made and satisfactory proof of the defendant's title shown.

*Mr. Fred. J. Shoyer* (with him *Mr. John S. McKinlay*), for the appellee :

Having authorized his servant to obtain the organ in a quiet and peaceable manner only, expressly directing him to use no force or violence whatever, the defendant was not liable for the act of the servant when he exceeded this special authority and resorted to wilful violence : Phila. etc. R. & Co. v. Wilt, 4 Wh. 143 ; Yerger v. Warren, 31 Pa. 319 ; Penna. Co. v. Toomey, 91 Pa. 256. Not one of the cases cited by the plaintiff sustains him. They all contemplate acts done by the servant in the ordinary course of his employment, or in the exercise of a discretionary power committed to him by the principal; whereas, Fox was sent on an extraordinary and specific errand, which he was commissioned to do only in a particular manner. The law affecting the present case is clearly set forth in the opinion of the court below disposing of the rule for a new trial.

OPINION, MR. JUSTICE WILLIAMS :

Dearborne is a dealer in cabinet organs and other musical instruments. It is his habit, and it seems to prevail quite generally among dealers in similar articles, to sell on the instalment plan to those who desire it, taking an instrument in the nature of a lease from the purchaser. The several instalments of purchase money are to be paid as rent. If they are paid, the article becomes the property of the so-called lessee. If

not paid, the vender reserves the right to seize and retain the article.

Fox was an employee of Dearborne, whose business was to hunt up instruments on which one or more instalments were unpáid, whether in the hands of the original purchasers or their vendees, in order that they might be seized or replevied by Dearborne. He had sought and obtained admission to the house of McClung by means of falsehood, and secured the number and description of the cabinet organ in the parlor. His employer alleged that it was an instrument which he had sold or leased to a customer two or three years before, and on which unpaid instalments were due. Fox expressed confidence in his ability to invade McClung's home a second time, and bring off the organ, without a breach of the peace. An expedition was fitted out, consisting of two men and a team, under the direction and control of Fox, for this purpose. Before they set out, they were instructed by Dearborne not to commit an assault and battery on any person, and not to break the law. They went to McClung's house, secured admission to the parlor by a false pretence, and began the removal of the organ. Mrs. McClung, and her son who happened to be at home, tried to resist, but were at once overpowered, and the organ and its belongings carried off. The scene is described by one of the witnesses thus: "I came down and saw Mr. Fox. He was holding my mother up against the parlor door. I came forward, and my brother came out, and asked what all this meant. He said: 'Just this: if you interfere with my business, I will shoot you dead,' and reached in his back pocket. . . . . . He said: 'I came to take this organ out of here. If you interfere with my business, I will shoot you.' Then my brother said: 'You do not take this organ out of this house. Show your authority. If you don't, you take it over my corpse.' . . . . . Then he clinched my brother. . . . . . Then the two colored men came in, and began knocking us about. . . . . . I then went to the corner and saw a policeman, and asked him to come down. He came down, and Fox said: 'Arrest this man, (meaning my brother,) and I will appear against him in the morning.' They arrested my brother, and he was taken to the station."

This action was brought by McClung to recover damages

for this high-handed and hostile invasion of his home. On the trial, the learned judge of the court below told the jury that the conduct of Fox " was without mitigation, and deserving of the severest condemnation," but that whether Dearborne was responsible for it or not, depended on the instructions he gave him when he started out on the expedition. The correctness of this instruction is the point on which this appeal depends.

The general doctrine laid down by the learned judge, that every man is liable for his own trespass only, must not be taken too literally; for one must be held to do that which he procures or directs another to do for him, as well as that which he does in his own person: Qui facit per alium, facit per se. Servants and employees are often without the means to respond in damages for the injuries they may inflict on others by the ignorant, negligent, or wanton manner in which they conduct the business of their employer. The loss must be borne in such cases by the innocent sufferer, or by him whose employment of an ignorant, careless, or wanton servant has been the occasion of the injury, and, under such circumstances, it is just that the latter should bear the loss. But the master is not liable for the independent trespass of his servant. If a coachman, while driving along the street with his master's carriage, sees one against whom he bears ill-will at the side of the street, and leaves the box to seek out and assault him, the master would not be liable. Such an act would be the wilful and independent act of the coachman. It was done while in his master's service, but not in the course of that service. But if the coachman sees his enemy sitting on the box of another carriage, driving along the same highway, and he so guides his own team as to bring the carriages into collision, whereby injury is done, the master is liable. The coachman was hired to drive his master's horses. He was doing the work he was employed to do, and for the manner of his doing it the master is liable: Wood on M. & S., § 277. It would be no defence to the master to prove that he had given his coachman orders to be careful and not drive against others. It was his duty not only to give such orders, but to see that they were obeyed. It will be seen, therefore, that it is the character of the employment, and not the private instructions given by the master to

Opinion of the Court.

his servant, that must determine the measure of his liability in any given case. An excellent illustration is afforded by the case of Garretzen v. Duenckel, 50 Mo. 104. The defendant was a gunsmith. In his absence from his store a clerk was waiting upon a customer who wanted to buy a rifle. The customer desired to see it loaded, and would not buy unless this was done. The orders of the defendant to his clerk were that he should not load a rifle in the store. The customer was so earnest in desiring it that the clerk loaded it, and by accident it was discharged, the ball injuring the plaintiff, who was sitting at a window on the opposite side of the street. The defendant set up his orders to his clerk as a defence, but it did not prevail. The court said: "There is no pretence that he (the clerk) was endeavoring to do anything for himself. He was acting in pursuance of authority, and trying to sell a gun, to make a bargain for his master; and, in his eagerness to subserve his master's interests, he acted injudiciously and negligently."

In the case now before us, Dearborne sent Fox and his helpers to the house of McClung for the purpose of seizing and bringing away the organ. He says: "I told him to take the men and team when he was ready, and to bring the organ in, but to be careful and not to have any row about it." Black, who drove the team, testifies: "Mr. Dearborne told Fox to go down and get this organ on South Sixteenth street; to get it as peaceably as possible, and not to have any assault and battery, or any disturbance whatever." These directions show that Dearborne knew that the errand on which he sent his employees was one that was likely to result in trouble, and would require to be managed with great coolness and care, in order to avoid collision and a breach of the peace. But, however the rule may be held in regard to the criminal liability of the master, under such circumstances, it is very clear that he cannot escape liability civilly by virtue of his instructions to his servant as to the manner of doing an act which the servant is to undertake on his behalf. He knew that the invasion of McClung's house, in the manner contemplated, was likely to excite indignation and resistance on the part of the inmates, and that what ought to be done might have to be determined under excitement, and without time for consultation or reflec-

Opinion of the Court.

tion by his employees. Under such circumstances, he puts them in his own stead, and he is bound by what they do in the effort to do the thing which was committed to them: Sanford v. Railroad Co., 23 N. Y. 343; Lake Shore etc. Ry. Co. v. Rosenzweig, 113 Pa. 519; Pittsb. etc. Ry. Co. v. Donahue, 70 Pa. 119; Hays v. Millar, 77 Pa. 238; Garretzen v. Duenckel, supra.

The defendant was bound not only to give proper instructions to his servants when sending them on such an errand, but he was bound to see that his instructions were obeyed. In the leading English case of Seymour v. Greenwood, 6 Hurl. & N. 359, referred to at some length in Wood on M. & S., § 297, it is said: " If the act is done within the scope of the servant's employment, and is done in the master's service, an action lies against the master, and he is liable even though he has directed the servant to do nothing wrong." Here Fox and his helpers were sent to bring away the organ. The acts complained of were committed in the course of, and as a means to, the accomplishment of that for which they were sent. Let it be conceded that they were instructed to do no wrong, and that they did what they were warned not to do. The master is nevertheless liable. When he sends them upon an errand that exposes them to resistance and danger, and the excitements consequent upon the presence of such a state of things, he must take the chances of their self-control and ability to obey. If he finds the risk inconveniently expensive, he may conclude to respect the homes of inoffensive citizens, and rely on his legal remedies for the recovery of any property to which he may claim title hereafter. The jury should have been told that the defendant was liable for what the learned judge aptly characterized as an " unjustifiable outrage " by his employees, and they should have been allowed to assess adequate damages for the breach of the plaintiff's close, if the entry was forcible, and for all the injury done him by any and all the defendant's servants while engaged in the business of seizing and carrying away the organ. All the circumstances may be considered in fixing the compensation to be awarded to the plaintiff.

> Judgment reversed, and a venire facias de novo awarded.