J-S23039-14

2014 PA Super 162

| | |
|---|---|
| IGOR SPITSIN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WGM TRANSPORTATION, INC. AND JAMES JOHNSON, III | |
| Appellee | No. 2792 EDA 2013 |

Appeal from the Order entered on October 2, 2013
In the Court of Common Pleas of Monroe County
Civil Division at No.: 5544-CV-2013

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS, J., and WECHT, J.

OPINION BY WECHT, J.:                    **FILED JULY 29, 2014**

Igor Spitsin appeals the trial court's October 2, 2013 order sustaining the preliminary objections of WGM Transportation, Inc. ("WGM") to Spitsin's complaint.[1]  We affirm.

Our standard of review of an order sustaining preliminary objections is as follows:

> [The appellate court must] determine whether the trial court committed an error of law.  When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint.  When considering preliminary objections, all material facts set forth in the challenged pleadings

---

[1]  The order in question did not address Spitsin's claims against James Johnson, III, and Johnson has not participated in this appeal.

are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections [that] seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011) (quoting

*Johnson v. Amer. Std.*, 8 A.3d 318, 329 (Pa. 2010)).

The facts as alleged by Spitsin in his complaint are as follows: On August 16, 2011, Johnson was employed as a taxi driver for WGM. Johnson picked up Spitsin on that date, and eventually brought Spitsin to the Wawa convenience store on West Main Street, Stroudsburg, Pennsylvania, ostensibly so that Spitsin could withdraw funds from an ATM to pay his cab fare. Spitsin then attempted to leave by Wawa's back door, but was prevented from doing so by individuals inside the store. When Spitsin left the store the way he had entered, Johnson stopped him, seeking the fare. Spitsin attempted to flee, but was tackled and restrained by a bystander a short distance away. While Spitsin was restrained, Johnson repeatedly kicked and punched Spitsin in the face. Spitsin was transported to a nearby hospital, where a scan revealed a hairline fracture in his jaw.

In count III of his complaint, the only count at issue in this matter, Spitsin sought to recover damages from WGM on a theory of *respondeat superior*. That doctrine provides as follows:

A master is liable for the acts of his servant [that] are committed during the course of and within the scope of the servant's

- 2 -

employment. Restatement (Second) of Agency § 219. This liability of the employer may extend even to intentional or criminal acts committed by the servant. Restatement (Second) of Agency § 231. Whether a person acted within the scope of employment is ordinarily a question for the jury. Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law. If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment.

The Restatement (Second) of Agency § 228 defines conduct within the scope of employment as follows: "(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master[;] and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271-72 (Pa. Super. 1979) (some citations omitted).

WGM filed preliminary objections to Spitsin's complaint, setting forth the following substantive propositions in support of its objections:

8.     An employer is not, by reason of the doctrine of *respondeat superior*, liable for an assault and battery by an employee, since such conduct, constituting [a] wanton or willful tort on the part of the employee, is generally regarded as beyond the scope of employment.

9.     An employee's acts are not, as a matter of law, deemed to be performed in the course and furtherance of the employer's business if the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally

without responsibility or reason, and the employer is not responsible as a matter of law. *Costa v. Roxborough Mem. Hosp.*, 708 A.2d 490 (Pa. Super. 1998); *Dee v. Marriott Int'l, Inc.*, No. Civ.A. 99-2459, 1999 WL 975125 (E.D.Pa. Oct. 6, 1999).

10. The alleged actions of [Johnson] are exactly the kind of forceful act that is excessive and so dangerous as to be totally without responsibility or reason and therefore [WGM] is not vicariously liable as a matter of law.

Defendant WGM's Preliminary Objections to Spitsin's Complaint, 7/31/2013, at 2-3 (citations omitted or modified).

On September 9, 2013, after hearing argument, the trial court issued an order and supporting opinion sustaining WGM's preliminary objections and dismissing Spitsin's *respondeat superior* claim against WGM. On October 9, 2013, Spitsin timely filed a notice of appeal of the trial court's order. On December 4, 2013, the trial court directed Spitsin to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). However, on the same day, the trial court entered a Rule 1925(a) statement, wherein it stated that, "upon review of [Spitsin's] Notice of Appeal . . ., we determine that the Court has adequately addressed all issues in its Opinion with accompanying Order dated September 9, 2013." Statement Pursuant to Pa.R.A.P. 1925(a), 12/4/2013. Nonetheless, on December 19, 2013, Spitsin timely filed a Rule 1925(b) concise statement. On December 23, 2012, the trial court issued an order reiterating its reliance upon its September 9, 2013 opinion.

Before this Court, Spitsin raises the following issue:

James Johnson, an on-duty cab driver employed by WGM, physically assaulted Spitsin while he was being restrained on the ground in an effort to recover unpaid cab fare belonging to WGM. On the facts averred in the complaint, is it clear and free from doubt that Johnson's use of force was so excessive or dangerous under the circumstances, and totally without responsibility or reason, that he departed from the scope of his employment as a matter of law?

Brief for Spitsin at 4.

For well over a century, Pennsylvania courts have endeavored to delineate when an employer may be held liable for the acts of its employee. The standard has changed at most modestly during that span. In **Potter Title & Trust Co. v. Knox**, our Supreme Court characterized the governing inquiry as follows:

> It is a general rule of law that when an act is done in the course of one's employment the employer will not ordinarily be excused from liability although the employe[e] abused his authority and thereby inflicted injury upon another. **Brennan v. Merchant & Co.**, 54 A. 891, 892 (Pa. 1903); **Pilipovich v. Pittsburgh Coal Co.**, 172 A. 136, 137, 138 (Pa. 1934); **Orr v. Wm. J. Burns Int'll Detective Agency**, 12 A.2d 25, 26, 27 (Pa. 1940). But there is an important exception to that general principle. In the Restatement of Agency § 229, comment b, it is said that 'Although an act is a means of accomplishing an authorized result, it may be done in so outrageous or whimsical a manner that it is not within the scope of employment.' In § 231, comment a, it is said: '* * * a gardener using a small stick in an assault upon a trespassing child to exclude him from the premises may be found to be acting within the scope of the employment; if, however, the gardener were to shoot the child for the same purpose, it would be very difficult to find the act within the scope of employment.' In § 235, comment c, under the heading of 'Outrageous acts', it is said that 'The fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business * * *. In such cases, the facts may indicate that the servant is merely using the opportunity

afforded by the circumstances to do the harm. Hence, unless the principal has violated a personal duty to the person injured, or unless he becomes liable because of the nature of the instrumentality entrusted to the servant * * *, he is not liable for such acts.'

113 A.2d 549, 551 (Pa. 1955) (citations modified).[2]

As Pennsylvania courts have come to rely more heavily, or at least more explicitly, upon the Restatement of Agency's formulations, we have set forth the inquiry regarding the scope of employment as follows:

> In certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee. The conduct of an employee is considered within the scope of employment for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

*Costa*, 708 A.2d at 493 (citing, *inter alia*, Restatement (Second) of Agency § 228) (citations and internal quotation marks omitted).

The trial court in this case relied solely upon **Howard v. Zaney Bar**, 85 A.2d 401 (Pa. 1952), and determined that the facts as set forth by Spitsin in his complaint and the inferences to be drawn therefrom

---

[2]    Since our Supreme Court cited the Restatement of Agency in **Potter Title**, Pennsylvania courts have continued to cite that restatement and its successor Restatement (Second) of Agency. Neither the respective rules cited in **Potter Title** nor the quoted comments thereto changed materially between the first and second restatements.

indisputably established that Johnson's conduct was so outrageous or whimsical that, as a matter of law, it fell outside the scope of Johnson's employment to an extent excusing WGM from all liability. That is to say, the trial court effectively concluded that the instant case was more akin to the Restatement of Agency's example of a gardener gunning down a trespassing child than its counterexample of the same gardener chasing the child off with a stick.

The trial court's reliance upon **Howard** illustrates half of the gun versus stick dichotomy. Our Supreme Court explained the underlying factual history of that case as follows:

> [I]n the early hours of the morning the plaintiff – a regular customer of this bar room – entered the premises and consorted with a female customer. The plaintiff admits he 'made some passes at her.' The bartender who was behind the bar said to the plaintiff, 'I would not talk to anyone like that. He asked me if I was looking for trouble and I told him no.' 'The bartender reached under the counter and pulled a pistol out * * * he shot at me. The bullet went through my little finger and into my neck.' * * * 'Then he shot at [another patron] . . . .'

85 A.2d at 402 (modifications and punctuation in original). In that case, after a jury returned a plaintiff's verdict, the trial court granted the defendant's motion for judgment notwithstanding the verdict upon the basis that the bartender's conduct in question was so outrageous that vicarious liability would not lie as a matter of law. Recognizing that a bartender's duties include maintaining order within his establishment, the trial court found that the bartender was authorized "to use all *reasonable* means to

maintain an orderly establishment." ***Id.*** (emphasis in original). However, in that case, "[t]he disorder, if any, was so insignificant and the use of violent force so excessive and dangerous, totally without responsibility or reason," that vicarious liability could not lie, notwithstanding the contrary findings of the jury. ***Id.***

Here, the trial court found ***Howard*** controlling because the confrontation arose when Johnson confronted Spitsin to collect the fare. "There is no doubt that part of [Johnson's] employment is collecting money from customers." Trial Court Opinion, 9/9/2013, at 4. Just as the bartender in ***Howard*** "was inherently authorized to use all reasonable means to maintain an orderly establishment," so was Johnson "inherently authorized to use all reasonable means to collect a fare." ***Id.***

> However, when [Johnson] punched and kicked [Spitsin] while he was being held on the ground by another person, unable to defend himself, [Johnson] departed from the scope of his employment. We cannot say that punching and kicking customers is a reasonable method of collecting a cab fare.

***Id.*** In further support of its conclusion, the trial court cited the hairline fracture to Spitsin's jaw as evidence that Johnson's actions, kicking and/or punching Spitsin in the head while he was restrained on the ground, "were so excessive and dangerous that they [were] without responsibility or reason." ***Id.***

Spitsin contends that other cases more closely resemble the instant case, and compel reversal. In ***McClung v. Dearborne***, 19 A. 698

(Pa. 1890), for example, our Supreme Court held that an employer was liable for injuries sustained when three of the employer's agents, who had been tasked with repossessing a cabinet organ from a client for nonpayment, physically assaulted the client, despite the fact that the employer instructed the employees not to assault anyone or violate the law. *See also McLaughlin v. Singer Sewing Machine Co.*, 75 Pa. Super. 533 (1920) (upholding vicarious liability in similar repossession case). Moreover, Spitsin notes that, in *Straiton v. Rosinsky*, 133 A.2d 257 (Pa. Super. 1957), a movie theater was held vicariously liable when one of its ushers struck a twelve-year-old patron with a flashlight, causing a laceration to the child's scalp. The child had rested his knees on the chair in front of him during a film. When the usher approached and demanded that the boy lower his knees and indicated that he would take the boy to see the manager, the child volunteered to accompany the usher and proceeded toward the theater exit. At some point during the interaction, the usher struck the boy from behind.

WGM argues that *McClung* and *McLaughlin* are distinguishable from the instant case. In those cases, in affirmatively dispatching employees to repossess certain items, the employees were aware that "[s]uch actions carry the risk that those employees will be met with violence and will have to counter with violence to carry out the task of their employer." Brief for WGM at 4. WGM asserts without substantiation that collecting a cab fare is inherently a less dangerous enterprise than repossession. WGM seeks also

to distinguish **Straiton** on the basis that the usher's action was "not so totally devoid of responsibility or reason as the alleged actions of [Johnson] in the present case, who repeatedly kicked and punched a restrained [Spitsin] in the face, risking the man's life in the process." **Id.**

Both parties' arguments have merit, and resolving the question presented is complicated by the fact that none of the above-cited cases are entirely on-point in their factual particulars or in their procedural posture; none of them involve violence committed against a restrained person, and none were decided as a matter of law on preliminary objections. Indeed, we have found no Pennsylvania case presenting this sort of claim that was decided on preliminary objections.

Johnson's assault, as characterized by Spitsin, indisputably was excessive, made doubly so by the fact that Spitsin was fully restrained at the time. At the same time, it seems plain that the conduct here at issue falls somewhere in the spectrum between the outrageous use of a firearm in **Howard** – exacerbated by the fact that the disorder that allegedly prompted the violence was so minor – and the more modest, albeit contextually excessive, violence exercised in **Straiton** in direct connection with the fulfillment of the usher's responsibilities. But we are not limited to these cases, and others further inform our inquiry.

Interestingly, a substantial volume of prior Pennsylvania precedent involves injuries to children.[3]  In **McMaster v. Reale**, 110 A.2d 831 (Pa. Super. 1955), for example, the question presented concerned partners' liability for the acts of their foreman.  The foreman in question allegedly had kicked and struck a minor in the face for entering a closed worksite and lingering near a ditch.  A jury returned a plaintiff's verdict as to the foreman but a defense verdict as to the partners.  The trial court declined to enter judgment notwithstanding the verdict in plaintiff's favor as against the partnership defendants.  We affirmed.  In so doing, however, we deferred to the jury, noting that the evidence presented was consistent both with a hypothetical finding that the foreman had acted within the scope of employment or the jury's actual finding that he was not.  **Id.** at 832.  Our deference to the jury in that case necessarily distinguishes it from the case at bar.

We must note that there appears to be at least a faint indication that, with Pennsylvania courts' mid-twentieth century adoption of aspects of the Restatement of Agency, the degree of an employer's exposure for the

---

[3]    Indeed, the sheer volume of Pennsylvania cases involving Dickensian narratives, in which grizzled employees dispatched youthful stowaways from moving conveyances with tragic results, is astounding.  **See Brennan**, 54 A. at 893 (finding vicarious liability for injuries sustained when a carriage driver knocked a boy from the carriage by striking the boy's knuckles with a buggy whip, and collecting similar cases); **Collins v. Rosenberg**, 161 A. 580, 582 (Pa. Super. 1932) (collecting still more similar cases).

actions of rogue employees was diminished. ***Compare, e.g., McLaughlin***, 75 Pa. Super. at 536 (upholding employer liability merely because the acts were in furtherance of their orders to repossess a sewing machine, because, and notwithstanding that, the agents manifested "a wanton and reckless disregard of the rights" of the victims and satisfied their orders in an "unjustifiable and outrageous manner"); ***Collins***, 161 A. at 582 (reviewing cases in which employer liability was upheld for a servant's "wanton and willful acts"), ***with Costa***, 708 A.2d at 493 (citing the modern formulation that vicarious liability will not lie when the use or degree of force is not anticipated by the employer and the force is not so "excessive and so dangerous as to be totally without responsibility or reason"); ***McMaster***, *supra*. Viewed in that light, cases such as ***McClung*** and ***McLaughlin***, in which the employees' repossession duties, which come with an inherent and predictable risk of violence, rendered the employers to some extent complicit in the potentially violent results of forcible repossession, the instant case is distinguishable and, thus, the result not inconsistent with those earlier cases.

In this case, it is fair to say, questions remain regarding whether fare collection generally was among Johnson's specified responsibilities.[4] And

_____

[4] No one can dispute that the driver of a car for hire typically is expected to collect the specified fare for a given trip. However, we do not know whether Johnson's employer specified that he should do anything more than ask for the fare, nor do we know whether (or how) Johnson was

*(Footnote Continued Next Page)*

that arguably raises questions of fact as to what direction or training Johnson received with regard to addressing a situation in which a passenger is recalcitrant about paying the fee. If Johnson received any such guidance, questions remain regarding whether WGM's direction in this regard either authorized or implied the authorization of the use of force, and, if so, what degree of force. In a closer case, *i.e.*, one lacking the brutality at issue in this case, the case might well be unfit for resolution as a matter of law. But the facts as pleaded in this case require a different result.

In the instant matter, Spitsin pleaded the following facts, to which he is bound: Spitsin did not pay his fare; he attempted to flee when confronted about paying his fare; and he was restrained by a bystander at the time that Johnson allegedly kicked and punched him in the face repeatedly. Thus, taking Spitsin's own account at face value, as we must in reviewing an order granting preliminary objections, he was restrained before Johnson attacked.

Nothing in the facts as pleaded addresses WGM's training or direction with respect to fare collection; there is no allegation that any affirmative act by WGM led Johnson to act so brutally toward Spitsin. The pleading contains no hint as to how WGM contributed to Johnson's apparent belief that his fare-collection responsibilities, however characterized, extended even to the sort of excessive and punitive brutality inflicted by Johnson on Spitsin.

*(Footnote Continued)* —————————

directed to undertake (or abandon) efforts at collection if the fare were to resist. Notably, Spitsin's complaint is silent on this question.

- 13 -

Spitsin's complaint does not even aver that any act by WGM arguably justified an inference by Johnson, whether reasonable or unreasonable, that such behavior was viewed as appropriate by WGM.

As noted by the trial court, according to Spitsin's complaint, all actions reasonably in furtherance of recovering the fare that Spitsin owed Johnson and WGM already had been effectuated. Spitsin's flight had been interrupted by a bystander, and nothing in the complaint suggests that the bystander's restraint was insufficient to keep Spitsin at the site until the fare could be collected upon Johnson's request or the police could be summoned to take control of the situation.

The inference is clear: Physical violence in such extreme measure, if any, could not serve WGM's purposes regarding the fare. But more importantly, given the procedural posture of the case and Pennsylvania Courts' traditional preference for jury fact-finding in related cases, even if discovery were to demonstrate that Johnson was trained or encouraged by WGM to persist when necessary to collect fares from recalcitrant passengers, the force that Johnson employed was utterly excessive and unnecessary under these circumstances. Ultimately, unless WGM explicitly instructed its drivers to attack restrained and vulnerable passengers who refused to surrender their fares, Johnson's behavior clearly was "excessive and so dangerous as to be totally without responsibility or reason." **_Fitzgerald_**, 410 A.2d at 1272.

- 14 -

Even if WGM authorized or directed the use of some force or restraint in collecting fares, we discern no error in the trial court's conclusion as a matter of law that Johnson's translation of that direction into action was grossly disproportionate to the responsibility at hand – "unexpectable" and "different in kind from that authorized" by WGM.  Restatement (Second) of Agency §§ 228(a)(1), (2).  To such effect, the Restatement of Agency offers the following elaboration on the salient principle:

> Although an act is a means of accomplishing an authorized result, it may be done in so outrageous or whimsical a manner that it is not within the scope of employment,  An assault by one employed to recapture a chattel, while entirely different from the act which he was employed to do, which was merely to take possession of the chattel, may be within the scope of employment, **unless committed with such violence that it bears no relation to the simple aggression which was reasonably foreseeable**.

*Id.* § 229 cmt. b.  This case presents a scenario that tracks closely the scenario proposed in that comment:  Johnson's nominal task was to collect fares, not necessarily to pursue those who attempted to flee without paying and take payment by brute force.  Nonetheless, it might fairly be deemed reasonably foreseeable that some degree of violence could occur in tandem with a livery driver's efforts to collect a fare from a resistant passenger.  However, in this case, Johnson's attempt to collect the fare, assuming that is a fair characterization of what occurred, was "committed with such violence that it [bore] no relation to the simple aggression which was reasonably

- 15 -

foreseeable" to WGM, and it would be unreasonable to hold WGM liable for such an event.

In sum, the force employed by Johnson – as characterized by Spitsin himself – cannot fairly be said to have occurred within the scope of Johnson's employment with WGM. **_See Fitzgerald_**, _supra_. Consequently, the trial court did not err in finding as a matter of law that Spitsin had failed to state a claim upon which relief could be granted for vicarious liability against WGM.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2014