JOHN WALLACE *vs.* MERRIMACK RIVER NAVIGATION AND EXPRESS COMPANY.

Essex. Nov. 1, 1881; Nov. 10, 1882. — Jan. 9, 1883. C. ALLEN, COLBURN & HOLMES, JJ., absent.

If a person sails for pleasure in his yacht on the Lord's day, in violation of the Gen. Sts. *c.* 84, § 2, and if, while he is so sailing, his yacht is injured by being negligently run into by a steamboat, his unlawful act necessarily contributes to the injury, and he cannot maintain an action therefor against the owner of the steamboat; but if the act of those in charge of the steamboat, in running against the plaintiff's yacht, was wanton and malicious, he can maintain such action, if they were acting within the general scope of their employment, and were executing their master's business.

DEVENS, J. The plaintiff was sailing his yacht on the Lord's day, and thus travelling in violation of the Gen. Sts. *c.* 84, § 2, which permits this only for reasons of necessity or charity, none of which are assigned by him. He contends that he may recover upon the first count of his declaration, alleging that the defendant carelessly and negligently ran its steamboat into his yacht while thus sailing. Where the illegal act of a plaintiff contributes to the injury he receives from the carelessness of another, he cannot recover; but if his illegal act is independent of the injury, he is not thereby precluded from recovering, although at the time he was acting in violation of law. *McGrath* v. *Merwin*, 112 Mass. 467. *Lyons* v. *Desotelle*, 124

Mass. 387. The illegal act, although contemporaneous, is then a condition merely, and not a contributory cause of the injury. *White* v. *Lang*, 128 Mass. 598. But where one travelling on the highway in violation of law sustains injury by collision with the vehicle of another carelessly driven, his own illegal act is an essential element in the case as proved by him. *Lyons* v. *Desotelle, ubi supra.* No distinction can be made between travellers with their vehicles upon the highway and those who travel for pleasure in their boats upon the river. In either case, the act of him who unlawfully travels is not merely a circumstance attending the injury, but a cause contributing to its occurrence. The plaintiff has therefore no just ground of complaint on account of the ruling of the presiding judge, that he could not maintain his action upon the first count of his declaration.

There was evidence in the case tending to show that the defendant was a common carrier of passengers, but the question whether the facts would present a case such as contemplated by the terms of the St. of 1877, *c.* 232,* and whether that would have any application, was not raised at the trial, nor is it here considered.

The second count of the plaintiff's declaration alleges, not a careless and negligent act on the part of the defendant in running down his boat, but a wanton and malicious one. Upon such a state of facts, although the plaintiff was in violation of the law forbidding travelling upon the Lord's day, his title to an action would be independent of his unlawful act. He would not thereby forfeit the general protection of the law, and the injury in such supposed case would proceed solely from the wrongful act of the defendant. *Kidder* v. *Dunstable,* 11 Gray, 342. *Smith* v. *Gardner,* 11 Gray, 418. *Counter* v. *Couch,* 8 Allen, 436. *Welch* v. *Wesson,* 6 Gray, 505. *Spofford* v. *Harlow,* 3 Allen, 176. *Damon* v. *Scituate,* 119 Mass. 66. *Smith* v. *Conway,* 121 Mass. 216. The learned judge who presided apparently recognized this as the law; but, as in his opinion "the evidence of the plaintiff, uncontradicted and uncontrolled, would

---

* Section 1 of this act, which took effect on May 15, 1877, provides that the Gen. Sts. *c.* 84, § 2, "prohibiting travel on the Lord's day, shall not constitute a defence to an action against a common carrier of passengers for any tort or injury suffered by a person so travelling."

authorize the jury in finding that the defendant's servants wilfully and maliciously ran the steamer upon the plaintiff's boat," he ruled "that for such an act upon the part of its servants the defendant would not be responsible;" and thereupon directed a verdict for the defendant. This instruction treats the defendant as exonerated from responsibility, if the act done by its servants was wanton and malicious, and disregards the inquiry whether they were acting under the general authority of the defendant as their master, and for the purpose of executing its orders and doing its work. There are respectable authorities certainly, such as *Richmond Turnpike Co.* v. *Vanderbilt*, 1 Hill (N. Y.) 480, and *Wright* v. *Wilcox*, 19 Wend. 343, which hold that, where the acts of a servant are wilful, the master is not responsible, even if they are done in the performance of his business, because such wilful acts are held to be a departure from the master's business.

These with many other authorities were carefully considered in *Howe* v. *Newmarch*, 12 Allen, 49; and it was there held, that, if the act of the servant was "done in the execution of the authority given him by his master, and for the purpose of performing what the master has directed, the master will be responsible, whether the wrong done be occasioned by negligence, or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner." The facts in that case, as reported, tended to show that a servant of the defendant, who was a baker, while pursuing the business of his master in driving from house to house and delivering bread, wilfully and intentionally drove his horse upon the plaintiff, by driving unlawfully upon the sidewalk against the plaintiff's remonstrance; and the instruction requested by the plaintiff, that "if at the time of the injury the defendant's servant was engaged in the business of the defendant, and within the scope of his duty as such servant, and he drove the horse over the plaintiff and did him an injury, the defendant is responsible, whether the act was done wilfully or negligently, the plaintiff being in the exercise of due care himself," was deemed to have been stated with substantial accuracy.

The evidence offered in the present case somewhat resembles that in *Howe* v. *Newmarch*, *ubi supra*. The persons in charge of the steamboat which did the injury were the servants of the

defendant, and the boat directed by them was upon one of her regular trips to Lowell when she struck the plaintiff's yacht. She varied her course before she reached the yacht, and immediately after the collision again varied it and kept upon her course. It presented enough, certainly, to be submitted to the jury, upon the inquiry whether the defendant's servants were not within the general scope of their employment, and whether, while accomplishing the business of the defendant, they had not done so wantonly and maliciously, and with a reckless disregard of the rights of others, by which the plaintiff had been injured in his property.

The case of *Howe* v. *Newmarch* has been since repeatedly recognized, and seems to us to express the true rule upon the subject to which it relates. *Ramsden* v. *Boston & Albany Railroad*, 104 Mass. 117. *Levi* v. *Brooks*, 121 Mass. 501. *George* v. *Gobey*, 128 Mass. 289.

Upon the second count of the plaintiff's declaration, there should therefore be a *New trial.*

The case was argued at the bar, in November 1881, by *W. S. Knox*, for the plaintiff, and by *W. F. Gile*, for the defendant; and was submitted on briefs, in November 1882, by the same counsel.