JEREMIAH McCARTHY *vs.* ARTHUR TIMMINS.

Suffolk. November 16, 1900. — April 2, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

A driver of a public carriage is not acting within the scope of his employment, who, when ordered to drive to the stable his day's work being done, turns out of his course and drives some distance in an opposite direction in order to visit a saloon to get a drink, and there leaves his horses unattended, and his employer is not liable to a traveller on the highway injured by reason of the horses running away on account of the driver thus leaving them.

TORT against a proprietor of public carriages for injuries caused by the alleged negligence of a driver of the defendant in leaving his horses unhitched and unattended while he was taking a drink in a saloon, in consequence of which the horses ran away and collided with the horse and wagon driven by the plaintiff. Writ dated November 12, 1898.

At the trial in the Superior Court, before *Lawton,* J., it appeared, that the plaintiff was in the express and coal business; that on October 11, 1898, at about 6.45 P. M., he, with one Hurley, was driving a one-horse wagon in Boston on the right-hand side of Massachusetts Avenue, going in the direction of Boylston Street; that just before they reached the corner of Massachusetts Avenue and Boylston Street, two horses running away and attached to a carriage, without any driver or other person in charge of them, ran into the plaintiff's team and knocked the plaintiff off his seat and broke his leg; and that on the same day, before the accident, one Scott had been in charge of this carriage and horses. The defendant then ad-

mitted that the carriage and horses belonged to him on the day of the accident and for a long time before, and that Scott was in his employ on the day of the accident, and had been in his employ for some time as a driver of the horses and carriage. The negligence of which the plaintiff complained was the act of Scott. The defendant did not admit that the conduct of Scott was negligent, or, if it were, that the defendant was legally responsible for his negligent act.

The plaintiff then called one O'Neil, a bartender in the employ of one McTernan, whose saloon was on the day of the accident situated on the corner of Massachusetts Avenue and Dundee Street. O'Neil testified that on the day of the accident, some time between 6 and 7 P. M., Scott drove up with the carriage, stopped on Dundee Street opposite a door of the saloon, and came in and bought a glass of whisky and drank it, and remained in the saloon about three minutes.

Scott was called as a witness by the plaintiff. His testimony is described and the substance of it stated in the opinion of the court.

At the close of the plaintiff's evidence, the defendant contended that it disclosed nothing upon which the jury would be warranted in finding a verdict for the plaintiff, and moved that a verdict be directed for the defendant. Thereupon, after argument, the judge directed a verdict for the defendant. The verdict was returned as ordered; and the plaintiff alleged exceptions.

The case was argued at the bar in November, 1900, and afterwards was submitted on briefs to all the justices.

*W. Burns*, for the plaintiff.

*N. Matthews, Jr.*, (*S. R. Spring* with him,) for the defendant.

HAMMOND, J. The only question argued by the defendant is whether under the circumstances he is answerable for the act of Scott in leaving the team unattended upon a public street. Upon this question it appeared that on the day of the accident Scott was and for a long time had been in the employ of the defendant as a driver of the hack and two horses constituting the team. Scott's business was to stand with the team near the corner of Dartmouth and Boylston Streets to solicit passengers for carriage. About six o'clock on the afternoon of the accident he was

told by one Casey, the starter in charge of the defendant's teams, to take the team to the defendant's stable in Allston, distant westerly about a mile and a half. The team was then standing on Dartmouth Street, about one hundred and sixty feet north of Boylston Street, facing northerly towards Commonwealth Avenue, and the shortest and most direct route to the stables was northerly on Dartmouth Street, then westerly on Commonwealth and Brighton Avenues. Instead of taking this route Scott turned the horses around, drove southerly on Dartmouth Street one hundred and sixty feet to Boylston Street, then westerly on this street about three thousand feet to Massachusetts Avenue, then southerly on this avenue seven hundred and fifty-eight feet to Dundee Street; and then he turned his horses in so as to face Dundee Street. Leaving the team there unattended, he entered the saloon where he purchased and drank some whiskey. The evidence tended to show that he was in the saloon only about three minutes, but while he was there the horses ran away and before they were stopped the team came into collision with the plaintiff's team which was on the right-hand side of Massachusetts Avenue going towards Boylston Street, and the plaintiff was injured.

Scott, called by the plaintiff, testified that when he turned the corner on Dartmouth Street and started down Boylston Street he was not expecting to do any business for his employer, but was going " to help myself." While he was going westerly on Boylston Street, which runs parallel with Commonwealth Avenue, he was going in the direction of the stables, but when on reaching Massachusetts Avenue instead of turning northerly on that avenue he turned southerly towards Dundee Street and the saloon, he was going directly away from the proper and usual route to the stables. The only witness who testified as to Scott's purpose in taking this route was Scott himself, whose testimony in substance was that his purpose was to get a drink.

The well established rule as to the extent of the liability of the master for the act of his servant, so far as material to this case, is that if the act is done without the authority of the master and not for the purpose of executing his orders or doing his work, then he is not responsible, but if it is done in the execution of the authority given by the master and for the purpose of per-

forming what he has directed, then he is responsible, whether the act be negligent or wilful.

The only trouble is in the application of the rule, and it is not easy to reconcile the cases. Scott had been employed to drive the team in the carriage of passengers, and that work was ended for the day. He was then directed to go to the stables, and there can be no doubt that so long as he drove the team with that end in view, and for that purpose and for no purpose of his own, he was engaged in his master's business, even if he made a detour contrary to the direction of his master. We are not disposed to lay much stress on the fact that he went down Boylston Street rather than Commonwealth Avenue, but when he reached Massachusetts Avenue it is plain that his only purpose in turning southward instead of northward, and going seven hundred and fifty-eight feet to Dundee Street, was not only to deviate from the regular way of reaching the stable but was for a purpose of his own, namely, to get a drink. He was upon no errand of his master, and this journey was not for the purpose of getting to the stables even by a circuitous route, or, to use the language of Hoar, J. in *Howe* v. *Newmarch*, 12 Allen, 49, 57, he was doing an act wholly for a purpose of his own, disregarding the object for which he was employed and not intending by his act to execute it, and not within the scope of his employment. In such case the defendant should not be held answerable.

Whatever may be the view entertained elsewhere as to the application of the principle to facts like these, (see *Ritchie* v. *Waller*, 63 Conn. 155,) we do not feel it necessary to review the numerous cases in our State and elsewhere bearing upon the question. Reference, however, may be made to the following cases as illustrative of the rule. *Howe* v. *Newmarch, ubi supra. Wallace* v. *Merrimack River Navigation & Express Co.* 134 Mass. 95. *Walton* v. *New York Central Sleeping Car Co.* 139 Mass. 556. *Bowler* v. *O'Connell*, 162 Mass. 319. *Storey* v. *Ashton*, L. R. 4 Q. B. 476. *Rayner* v. *Mitchell*, 2 C. P. D. 357. See also *Perlstein* v. *American Express Co.* 177 Mass. 530.

It is contended, however, by the plaintiff that the intent of Scott in turning south when he reached Massachusetts Avenue and going to the saloon on Dundee Street is a question of fact,

and that the jury might have disbelieved him ; and they point to the fact that Scott originally told a different story, and told this one only after he had had a conversation with the defendant. It is to be noted, however, that Scott was called by the plaintiff, that his earlier stories in no way concerned his motives for going to the saloon, and that the whole theory of the plaintiff's case seemed at the trial to be that Scott went into the saloon. The ruling of the court was made at the close of the plaintiff's evidence. There did not appear any conflict of evidence, and we think the question of the veracity of Scott cannot be raised now before us. In the opinion of a majority of the court the exceptions must be overruled.

*Exceptions overruled.*