MARY M. GRANT *vs.* SINGER MANUFACTURING COMPANY.

Suffolk.    November 23, 1905. — March 1, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Master and Servant.*

In an action against a corporation manufacturing sewing machines for an assault on the plaintiff alleged to have been committed by a servant of the defendant in taking from her a sewing machine for non-performance of the conditions of a contract of conditional sale, there was evidence that one S. was employed by the defendant to take machines on failure of the purchasers to pay for them in accordance with the conditions of their contracts, that his instructions were to take the machine if he could get it peaceably, and, if not, to report the matter, whereupon his superior would replevy the machine, that he had men under him to do business and was supposed to handle these men, that he employed one A. to assist him in removing the machine in question, having made a sham sale from the defendant to A. for the purpose of giving him an apparent title, and that A. in attempting to remove the machine was resisted by the plaintiff and committed the assault. *Held,* that a verdict for the plaintiff was justified, the defendant being liable for the acts of A. in the course of his employment, even if A. had been told not to use force.

TORT for an assault by alleged agents of the defendant. Writ dated February 12, 1903.

At the trial in the Superior Court before *Gaskill,* J. the jury returned a verdict for the plaintiff in the sum of $500; and the defendant alleged exceptions.

The following statement of the case is taken from the opinion of the court:

This is an action for an assault committed by one Andrews, in taking from the plaintiff a sewing machine when she was in arrears in her payments for it. She bought the machine of the defendant. The defendant contended that the sale was conditional; that the plaintiff had taken a written lease of the machine, and that the plaintiff had been furnished with a copy of it under R. L. c. 198, § 12. But on this point the evidence was conflicting.

The plaintiff introduced evidence that on the day in question one Sexton and one Andrews came to her house in a wagon on which was painted "Singer," and that Andrews "in attempting to remove said machine, was resisted by the plaintiff, whereupon

the said Andrews choked her and pushed, tearing her dress, and committed the assault and battery on the plaintiff" here in question.

To prove that Andrews was in the defendant's employ the plaintiff relies on the following evidence.  One of the plaintiff's witnesses testified " that he had seen Andrews in the Chelsea office on an average of three or four times a week."   Andrews, on being asked by the defendant if he had ever been employed by the defendant, answered: " Not under salary, no."   He further testified on direct examination that he bought the plaintiff's lease for $5, " with the understanding that if the machine was obtained the Singer Company was to take it into their store and sell it and pay him his $5 out of the proceeds, and that he received from Sexton a bill of sale of the machine, which he had turned over to the bookkeeper of the Chelsea office of the Singer Company, after trouble had been made by the Grants and which he had been informed could not now be found."   On cross-examination he admitted that before the matters here complained of " the only work he had done for the Singer Company was in the way of looking up lost machines, which numbered five or six "; that he never had paid the $5 nor had it charged to him in account although the defendant owed him money ; " that he had accompanied Sexton on several occasions, when he had made collections, and had on some occasions assisted him in taking out machines when there had been no trouble at all ; that is, Sexton had gone in and talked the matter over, and had then called him to help take out the machine ; that his first case for the Singer Company would date back about twelve years." Sexton testified to the sale to Andrews, and that he accompanied him to identify the machine.   He denied that any assault was committed, but he admitted that after seeing that " there was going to be trouble in obtaining the machine he said, ' Mr. Andrews, you need not proceed any farther, I will send and replevin the sewing machine.' "   On cross-examination he testified to employing Andrews on several previous occasions to locate lost machines, and that he had accompanied him when he went for those machines before and since the time here in question.

Madigan, Sexton's superior, was called and testified that Sex-

ton's instructions were to take the machine if he could get it peaceably, and if not, to report it and he would replevy it. On cross-examination he testified " that Sexton had men under him to do business." In answer to the question whether Sexton could give orders to these men under him without communicating with Madigan, he answered, " Well, if there was anything come up he could always ask me about it, but then he was supposed to handle. But he couldn't call up every minute of the day, but was supposed to handle these men."

The defendant asked for the following rulings :

" 1. Upon the evidence and under the pleadings the action cannot be maintained.

" 2. Any authority given by the defendant to its agents or servants to remove or repossess a machine delivered under a lease where the payments were in default does not necessarily constitute authority to use force to accomplish such removal or repossession.

" 3. If the defendant had expressly instructed its agents in the work of removing or repossessing a machine to accomplish such removal only by peaceable means and without the use of force and if the machine could not be removed or repossessed by peaceable means and without the use of force, then to obtain possession under a writ of replevin, no express authority to use force would be conferred and any implied authority to use force would be negatived.

" 4. To make the acts of the said Sexton or said Andrews or either of them binding upon the defendant it must appear that said acts were done for the purpose of performing what the defendant had directed and in the execution of the authority actually given by the defendant to its agents.

" 5. If the alleged acts complained of were not done in the actual removal of the machine and for the purpose of accomplishing such removal, but on the other hand were done for the purpose of revenge or some other improper purpose the defendant would not be liable.

" 6. Upon the evidence no authority whatsoever is shown by which any acts done by said Andrews can bind the defendant company. Any alleged delegation of authority on the part of said Sexton to the said Andrews purporting to authorize the

said Andrews to use force would not be binding upon this defendant."

These rulings were refused, except so far as they were given in the charge. The judge in substance left it to the jury to say whether the sale to Andrews was a sham and he was in reality an employee of the defendant, telling them that, if they found that he was, they could find the defendant liable if they believed that he assaulted the plaintiff to get possession of the sewing machine.

The defendant excepted to the refusal to give the rulings requested, and to two parts of the charge: First, to a statement in the early part of the charge in which the judge told the jury that if they found that unnecessary violence was used in case a lease was given and a copy furnished, "then you come to this question, — What makes, or will make the defendant corporation liable for the unjustifiable act of Andrews? Well, that depends entirely, gentlemen, upon whether Andrews in the first instance was acting in behalf of the corporation or not," and second, to this instruction: "If Sexton had no authority to get anybody to help him, why then, of course that does not bind the Singer Manufacturing Company, but if in the course of business which had been conducted prior to this time, the company, that is, the higher officials of the company, those that had a right to give directions, had known that Sexton was doing that, hiring Andrews to assist him when he wanted to go and get a machine, and had paid him, was that out of the funds of the Singer Manufacturing Company that Andrews had been paid for the work that he had done? Then you have the right to consider that upon the question of the authority of Sexton to employ somebody."

Exceptions were taken to the refusal to give the rulings requested, and to the two parts of the charge of the judge stated above.

*A. M. Lyman & L. D. Jennings,* for the defendant.

*E. L. McManus, J. A. McCaig & J. F. Lynch,* for the plaintiff.

LORING, J. [After the foregoing statement of the case.] The evidence warranted a finding that Sexton was authorized to employ assistants; that he had employed Andrews to assist him in retaking the plaintiff's machine, and that the sale to Andrews was a sham.

It is settled that the defendant would be liable for force used by Andrews as a means of retaking the machine, even if he had been told not to use force.  *Roberge* v. *Burnham*, 124 Mass. 277. *George* v. *Gobey*, 128 Mass. 289.   The defendant's liability does not depend upon his having been authorized expressly or impliedly to use force, but upon his having used force as a means of doing what he was employed to do.  *Howe* v. *Newmarch*, 12 Allen, 49.   *McCarthy* v. *Timmins*, 178 Mass. 378.   *Perlstein* v. *American Express Co.* 177 Mass. 530.   There is no difference between hiring a man to retake a machine with instructions not to use force, and instructing an officer in hiring men to retake machines to hire them to retake machines without using force.

There was no evidence in the case calling for the fifth ruling as to an assault for the purpose of revenge.

The defendant's counsel have not taken up the several exceptions in their argument.   We have followed their argument and have not dealt with the exceptions separately.

*Exceptions overruled.*