# AXMAN *v.* WASHINGTON GASLIGHT COMPANY. (1)

---

CORPORATIONS; TORTS; PRINCIPAL AND AGENT; DAMAGES; INSTRUCTIONS
TO JURY; EVIDENCE; LICENSEES.

1. A corporation may be held responsible for the tortious acts of its agents when such acts are within the scope of their employment. (Following *United Cigar Stores Co.* v. *Young*, 36 App. D. C. 390.)

2. The true test in measuring the principal's responsibility for the tortious acts of his agent is whether the act of the agent was done in the transaction of the business, either impliedly or expressly intrusted to the agent by the principal. If it was, the principal is responsible for the manner in which the agent executed his commission, even if

he acted wantonly, recklessly, or against orders; but the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable.

3. Where, in an action against a gaslight company by the wife of one of its patrons, the plaintiff's evidence tends to show that inspectors of the company, in forcibly gaining access to the plaintiff's home for the purpose of reading one of the defendant's meters, committed an assault and battery upon her, it is error for the trial court to instruct the jury that, even if they should find that the entry was a forcible one and that the inspectors committed the assault, they must also find, in order to charge defendant for such entry and assault, that these acts were done either by express authority of the defendant, or, after being committed, were known by the defendant and ratified by it. The question to be submitted to the jury under such circumstances is whether the acts complained of were performed by the agents of the defendant, in the course and within the scope of their employment in the business of their principal.

4. In an action against a gaslight company for an alleged assault and battery committed on the plaintiff by its inspectors while forcibly entering her home, it is proper for the jury, in assessing plaintiff's damages, to take into account any injury suffered by her in body or mind, and to consider the humiliation and outrage to which she might have been subjected.

5. In an action against a gaslight company by the wife of one of its patrons, for an alleged assault committed by one of its inspectors while forcibly entering her home for the purpose of reading a gas meter of the defendant, it is error for the trial court to instruct the jury that, in assessing the plaintiff's damages, they are entitled to take into consideration the fact, if it be a fact, that the plaintiff and her husband acted in a suspicious manner, and led the inspectors to infer that the reason why they were denied entrance was because the plaintiff had tampered with the gas meter so as to prevent it from properly registering.

6. In an action by the wife of a patron of a gaslight company for an assault committed by the agents of the defendant while forcibly entering the house in which the plaintiff was living, for the purpose of reading a gas meter, it is misleading and erroneous for the trial court to instruct the jury, at the request of the defendant, that they cannot consider the fact that the agents of the defendant broke into the house in which the plaintiff was living, for, while the plaintiff could not maintain an action for a trespass to the freehold, the jury are entitled to consider all of the circumstances surrounding the alleged assault in order to determine the damages suffered.

7. A contract between a gaslight company and a patron, which gives the

company the right of access to the patron's house to examine the meters and other apparatus of the company, is a mere license to the defendant and its agents to enter the premises at reasonable times.

No. 2325.   Submitted December 9, 1911.   Decided January 8, 1912.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, upon verdict, in an action to recover damages alleged to have been sustained by reason of an assault and battery committed upon her by the agents of the defendant.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District upon a verdict for the defendant, the Washington Gaslight Company, appellee here, in an action by the plaintiff, Anna A. Axman, appellant here, for the recovery of damages alleged to have been sustained by reason of an assault and battery claimed to have been committed upon her by agents of the defendant while forcibly entering her home.   Plea, the general issue.

The defendant is a public service corporation engaged in manufacturing and furnishing gas in the District of Columbia. Plaintiff's husband was one of defendant's patrons.   On February 5, 1909, the family home was on 7th street in this city, where it had been for three and one-half years.   Plaintiff's evidence tended to show that, between 2 and 3 o'clock in the afternoon of the above date, two agents of the defendant appeared and sought   admission by the plaintiff for the purpose of making an examination of the gas meter.   Plaintiff knew one of them to be a gas inspector.   The meter was in the cellar, and plaintiff informed them that she could not admit them, because the door to the cellar was locked and her husband had the key, or at least that she did not knew where it was.   She suggested that they come back later, after the return of her husband from his work.   A little later the two men, reinforced by another, returned and again sought admission, one of them say-

ing that he had a key that would open the cellar door. Plaintiff again denied them admittance. By that time several people had congregated in front of the house. Meanwhile plaintiff had despatched a note to her husband by her daughter, who was present, asking him to come home at once or send the key to the cellar. One of the three men went to a nearby store, and came back with a pair of big pliers in his hands. Admission was again sought and denied. Plaintiff went into the parlor, and when one of the men, after raising the window, attempted to get through and she tried to prevent his entrance, he pushed her to one side and into a chair, effected an entrance, and, as she testified, cursed her. This man was followed by another. The two admitted the third through the front door. And about that time the husband arrived, and, after some discussion, admitted the men to the cellar. There was other testimony tending to support plaintiff's version as to the manner in which ingress to the house was effected, and also tending to support her testimony as to the extent of her injuries. It was also in evidence that at the time the entrance was effected a large crowd had congregated about the premises. The plaintiff's evidence further tended to show that the inspectors expressed themselves as suspicious that her husband had been stealing gas by disconnecting the meter. Plaintiff assigned as the reason why the cellar door was locked the fact that her husband had a workshop in the cellar and wished to keep out the children.

The defendant introduced as a witness in its behalf one Lynch, who testified that he had been in its employ as an inspector for seven years; that he was acting in that capacity upon the occasion in question; that he knew Mrs. Axman, and had taken the condition of the meter in the Axman home each month for about two years; that he went there on January 16th, the regular time, and did not get in, as Mrs. Axman informed him the cellar was locked and her husband had the key. He went again on the 17th and was again denied admittance for the same reason. He made a third attempt on February 5th, in pursuance of his duty, although he had not been specifically directed to go upon that date. As a matter of fact, the meter

had been read for the month of January, but Lynch did not know it. The testimony of this witness is not materially different from that of Mrs. Axman, except as to the manner in which ingress to the house was finally effected. He admits that he was refused admittance upon each application to Mrs. Axman, and that after the first refusal he telephoned the company for a third man. Asked why he wanted this third man, he replied: "I had him down there as a witness that I was not able to read the meter,—to get him to read the meter." Lynch further testified that Mrs. Axman came to the window and raised it; that they asked her to let them in and she refused; that they informed her that her husband was then in the house, to which she responded, "no;" that the lady next door raised the window and said, 'Yes, he just got a chair from me and went over the back fence:'" that thereupon Mrs. Axman left the window, and witness and one of the other inspectors went through it and into the house. They then admitted the third inspector through the door. Each of the three denied that an assault had been committed upon Mrs. Axman. Lynch admitted that he was suspicious that Axman was stealing gas; that "there was no occasion to raise the window, because Mrs. Axman had relieved them of the necessity by raising it herself."

It further appeared in evidence that, upon complaint by Mr. Axman at the office of the gas company, another man was sent to read the meter thereafter. There was no evidence that any officer of the company directed Lynch and his associates to force or make an irregular entrance into the Axman home, or had knowledge of what was intended to be done in that regard. It was in evidence that Lynch telephoned the office of the company to send the third inspector, but that he assigned no reason whatever for his request. Each of the inspectors was still in the employ of the company when he testified, but there was no direct evidence that their alleged trespasses were ratified by the defendant. No official of the defendant company testified as to the general or special instructions given inspectors.

The court, over the objection and exception of the plaintiff, granted several prayers of the defendant, to the effect that even

though the jury should find that the entry of the company's inspectors was a forcible entry, and that said inspectors committed the assault in question, they must also find, in order to charge the company for such entry and assault, that these acts were done either by "express authority of the defendant, or, after being committed, were known to said defendant and by it ratified."

*Mr. Charles Poe* and *Mr. Francis L. Neubeck* for the appellant.

*Mr. Benjamin S. Minor, Mr. Hugh B. Rowland,* and *Mr. L. Randolph Mason* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

1. It is conceded that the three gas inspectors who entered plaintiff's home were agents of the defendant in so far as they committed no acts of trespass; in other words, that the business upon which they were there was not their own, but that of the defendant. The issue, therefore, is sharply defined. Were these men, upon the occasion in question, acting within the scope of their employment in the business of their principal, so as to charge that principal with responsibility for their acts, even though the manner in which they fulfilled their duties was inconsistent with or in violation of their instructions? It will be helpful in the determination of this question to review some of the cases in which it has been considered. It is, of course, now beyond dispute that a corporation may be held responsible for the tortious acts of its agents, when such acts are within the scope of their employment. *Lake Shore & M. S. R. Co.* v. *Prentice,* 147 U. S. 101, 37 L. ed. 97, 13 Sup. Ct. Rep. 261; *United Cigar Stores Co.* v. *Young,* 36 App. D. C. 390;

In *Washington Gaslight Co.* v. *Lansden,* 172 U. S. 534, 545, 43 L. ed. 543, 548, 19 Sup. Ct. Rep. 296, in which it was sought to charge the gas company for an alleged libel published

by its general manager, it was held that, in order to hold the master responsible in such a case, "there must be some evidence from which an authority might be implied on the part of the manager to represent the company as within the general scope of his employment in regard to the subject-matter."

In *New York, C. & H. R. R. Co.* v. *United States,* 212 U. S. 481, 53 L. ed. 613, 29 Sup. Ct. Rep. 304, involving in its broadest aspect the question whether a corporation can commit a crime, the court, after stating the general rule as to the responsibility of a corporation in actions of tort for damages for the acts of its agent within the scope of his employment, said: "And this is the rule when the act is done by the agent in the course of his employment, although done wantonly or recklessly, or against the express orders of the principal. In such cases the liability is not imputed because the principal actually participates in the malice or fraud, but because the act is done for the benefit of the principal, while the agent is acting within the scope of his employment in the business of the principal, and justice requires that the latter shall be held responsible for damages to the individual who has suffered by such conduct. *Lothrop* v. *Adams,* 133 Mass. 471, 43 Am. Rep. 528."

In *Grant* v. *Singer Mfg. Co.* 190 Mass. 489, 6 L.R.A. (N.S.) 567, 77 N. E. 480, the question was whether a corporation manufacturing sewing machines was responsible in damages for an assault committed by one of its agents in taking a sewing machine for nonperformance of the conditions of a contract of conditional sale, it appearing that the agent had been instructed to take the machine if he could get it peaceably, and, if not, to report the matter that resort might be had to replevin. The liability of the corporation was affirmed, the court saying: "It is settled that the defendant would be liable for force used by Andrews as a means of retaking the machine, even if he had been told not to use force. *Roberge* v. *Burnham,* 124 Mass. 277; *George* v. *Gobey,* 128 Mass. 289, 35 Am. Rep. 376. The defendant's liability does not depend upon his having been authorized expressly or impliedly to use force, but upon his

having used force as a means of doing what he was employed to do."

*Miller-Brent Lumber Co.* v. *Stewart,* 166 Ala. 657, 51 So. 943, 21 A. & E. Ann. Cas. 1149, involved the question whether the lumber company was responsible for an assault alleged to have been committed by its agent in entering plaintiff's land. The court ruled that, even though the evidence warranted a finding that the act of the agent "in assaulting plaintiff was not anticipated or expressly authorized by the master, but, on the contrary, was an abuse by Vaughan [the agent] of the authority committed to him, *viz.,* to go through the gate, as indicated, the master was responsible." It was further held that even if the lumber company was in fact entitled to cross plaintiff's land, that constituted no justification or palliation of the assault.

In *Bergman* v. *Hendrickson,* 106 Wis. 434, 80 Am. St. Rep. 47, 82 N. W. 304, the action was against saloon keepers for an assault committed by their bartender upon the plaintiff, who had refused to pay for drinks. It was held that the defendants were liable for the servant's act, there being evidence that the assault was committed for the purpose of collecting payment for the masters' liquor, and hence that the servant was acting within the scope of his employment. "It was his method," said the court, "of performing the duty delegated to him, and, although the method may not have been either expressly authorized or even contemplated,—nay, although it may have been expressly prohibited,—yet the master is liable for the damages caused thereby, provided he has intrusted to the servant the duty he was attempting to perform."

In *Evans* v. *Davidson,* 53 Md. 245, 36 Am. Rep. 400, the action was to recover the value of a cow killed by defendant's servant, a general farm hand, in driving the cow from defendant's field, the defendant being away from home at the time. There was no direct evidence that the servant had authority to drive the cow from the field. The court, however, held that it was for the jury to say whether the servant was acting at the time

"in the course of his master's service and for his master's benefit, within the scope of his employment."

In *McClung* v. *Dearborne,* 134 Pa. 396, 8 L.R.A. 204, 19 Am. St. Rep. 708, 19 Atl. 698, which was an action for damages growing out of a trespass committed by the defendant's agents in taking possession of an organ for defendant, the defendant was held liable on the ground that "the acts complained of were committed in the course of, and as a means to, the accomplishment of that for which they were sent. Let it be conceded that they were instructed to do no wrong, and that they did what they were warned not to do. The master is nevertheless liable."

The following additional cases are in accord with those above reviewed. *Stranahan Bros. Catering Co.* v. *Coit,* 55 Ohio St. 398, 4 L.R.A.(N.S.) 506, 45 N. E. 634; *Shear* v. *Singer Sewing Mach. Co.* 171 Fed. 678; *Garretzen* v. *Duenckel,* 50 Mo. 104, 11 Am. Rep. 405; *Moon* v. *Matthews,* 227 Pa. 488, 493, 29 L.R.A.(N.S.) 856, 136 Am. St. Rep. 902, 76 Atl. 219; *Richberger* v. *American Exp. Co.* 73 Miss. 161, 31 L.R.A. 390, 55 Am. St. Rep. 522, 18 So. 922; *Quinn* v. *Power,* 87 N. Y. 535, 41 Am. Rep. 392; *Loomis* v. *Hollister,* 75 Conn. 718, 55 Atl. 561.

In the light of these adjudications, we conceive the true test in measuring the principal's responsibility, to be whether the act of the agent was done in the prosecution of the business either impliedly or expressly intrusted to the agent by the principal. If it was, the principal is responsible for the manner in which the agent executed his commission, even if he acted wantonly, recklessly, or against orders. He represented his principal, and what he did was for the benefit of his principal. If his recklessness or lack of judgment caused loss or damage, it is only just that the one who selected and commissioned him should be held accountable therefor. Of course, the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable. The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends.

In the case before us it is conceded, as we have said, that these three gas inspectors, when they appeared at plaintiff's home, were the representatives or agents of the defendant; that they were there upon the business of the defendant, and in no sense upon their own. Why did they seek admission to plaintiff's home? Admittedly for one purpose,—to make an inspection of the defendant's meter. In making such inspection they would have been acting within the scope of their authority, in the business of the defendant, and for its benefit. When they went through the window they had the same object in view; the evidence disclosed no other, and, even if there had been a conflict in the evidence upon this point, it would have been for the jury to determine it. While we do not regard it as material, in the view we have taken of the case, it is at least significant that no official of the defendant testified that these inspectors had ever been instructed as to the manner in which they should perform their duties. Assuming, however, what the record does not show, namely, that they were instructed or expected to effect an entrance in a regular way, it having been their duty to make an inspection, the defendant was liable for any damages caused by them in performing that duty. Had they climbed to the roof of plaintiff's house, and, for the purpose of avenging some real or fancied personal grievance, thrown down the chimney or pulled off shingles, it could not have been said that they were acting in the business of their principal, within the scope of their authority. The acts complained of, however, were in supposed furtherance of the business that the company had intrusted to them. Great care should be exercised in the selection and instruction of these inspectors, since they are sent into the homes of the patrons of the company. To insure the exercise of such care, the company should be held to a strict accountability for the manner in which these men perform the work intrusted to them. It is needless to observe that the humblest citizen is entitled to the same protection in the peaceful enjoyment of his home that is accorded any other.

2. The court granted a prayer of the plaintiff on the ques-

tion of damages, to the effect that if the jury should find for the plaintiff, they might, in assessing damages, take into consideration all the facts and circumstances, including the conduct and language of the agents and servants of the defendant, and give a verdict that would fairly compensate the plaintiff under all the circumstances of the case.   The court then granted certain instructions submitted by the defendant, to which the plaintiff objected and excepted, to the effect that the jury were "limited to the actual damages suffered," and that in assessing such damages they were entitled to take into consideration the fact, if they should find it to be a fact, "that the plaintiff and her husband acted in a suspicious manner, and led the agent or agents of the defendant to fairly imfer from said suspicious actions that the reason why said agents were denied entrance to the premises, for the purpose of inspecting the gas meter, was because the plaintiff had tampered with said gas meter in such a manner as to prevent said meter from properly registering the consumption of gas."   The first part of defendant's instruction might easily have misled the jury, as in assessing plaintiff's actual damages it was proper to take into account any injury suffered in body or mind, and to consider the humiliation and outrage to which she may have been subjected, to the end that she might be fairly compensated under all the circumstances of the case.   *Lake Shore & M. S. R. Co.* v. *Prentice,* 147 U. S. 101, 111, 37 L. ed. 97, 102, 13 Sup. Ct. Rep. 261. The second part of the instruction was erroneous.   The plea was the general issue, and not justification.   Whatever may have been the conduct of the plaintiff and her husband, it afforded no justification for the acts complained of, and should not have been considered by the jury.   *Miller-Brent Lumber Co.* v. *Stewart,* 166 Ala. 657, 51 So. 943, 21 A. & E. Ann. Cas. 1149 ; *McClung* v. *Dearborne,* 134 Pa. 396, 8 L.R.A. 204, 19 Am. St. Rep. 708, 19 Atl. 698.   Had the plaintiff and her husband been guilty of any dereliction, the law afforded ample redress.   Neither belief in nor the existence of such dereliction would justify or palliate a breaking and entering of plaintiff's home by these three men.

3. The jury were further instructed, at the request of the defendant and over the exception of the plaintiff, that in assessing damages they could not consider the fact, if they should find it to be a fact, that these agents of the defendant broke into the house in which plaintiff was living. This was misleading. While the plaintiff could not maintain an action for a trespass to the freehold, the jury were certainly entitled to consider all the circumstances surrounding the alleged assault. In no other way could they have determined the actual damages suffered. The plaintiff was in her home, where she had a right to be; and, in trying to prevent these men from forcibly entering it, she was, as she alleges, cursed and assaulted. The entry, therefore, was one of the circumstances of the assault.

4. One point remains: The defendant, over the objection of the plaintiff, introduced in evidence the contract between the company and Axman, under the terms of which the company was to examine the meters and other apparatus, and have the right of free access to the premises for that purpose. This contract was merely a license to the defendant's agents to enter the premises at reasonable times, *in a regular way,* nothing more; and the jury were in effect so instructed at the request of the plaintiff.

As we have previously suggested, the question should have been submitted to the jury whether the acts complained of in plaintiff's declaration were performed by agents of the defendant in the course and within the scope of their employment in the business of their principal. *Washington Gaslight Co.* v. *Lansden,* 172 U. S. 534, 544, 43 L. ed. 543, 547, 19 Sup. Ct. Rep. 296.

Judgment reversed, with costs, and the cause remanded for further proceedings.               *Reversed and remanded.*