## POWELL *v.* NEWMAN.

*Negligence — Automobiles — Liability of husband for wife's acts — Principal and agent — Master and servant.*

Where the owner of a motor vehicle, purchased for the mutual pleasure of himself and family, permits his wife to use it for her own business and pleasure, the latter occupies the relation of borrower only and does not thereby become the agent or servant of the husband so as to charge him with her negligence while so using the machine.

(Decided December 24, 1914.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. D. B. Carpenter,* for plaintiff in error.
*Mr. V. H. Burke,* for defendant in error.

MEALS, J.   The plaintiff prosecuted an action in the municipal court of Cleveland against the defendant, for the recovery of damages for personal injuries sustained by him in an automobile collision.

At the conclusion of the plaintiff's case the court directed the jury to return a verdict in favor of the defendant, on which judgment was entered for the defendant, which judgment was affirmed by the court of common pleas.   We are asked to reverse both judgments.

The sole question presented is as to the defendant's liability.   The defendant purchased an automobile for the mutual pleasure of himself and family.   His wife and daughter were accustomed to use the machine as they saw fit.   This use of the machine was made with the defendant's full knowl-

edge and assent. At the time of the accident the machine was being driven by the defendant's wife, who was accompanied by her daughter. The defendant was not present.

The plaintiff, to fasten liability upon the defendant for his injuries, invokes the doctrine of *respondeat superior* as being applicable to these facts. Was the defendant's wife his agent and about his business at the time of the accident? If so, he would be liable for injuries occasioned by her negligence. Or, was she using the machine for her own business and pleasure? In which case she would fall within the class of borrowers, and the husband, the owner of the machine, would not be liable.

It is not claimed that the defendant was present or that he exercised any control whatever over the operation of the machine, at the time of the accident. The claim of liability as against him is grounded solely upon the fact that the machine was being used at the time of the accident with his assent and for the purpose for which it was bought, namely, to provide recreation and enjoyment for himself and the members of his family.

Lord Coleridge, C. J., in *Rayner* v. *Mitchell*, 2 L. R. Common Pleas Div., 357, a case wherein the servant who had been employed to drive a cart had gone with it outside the scope of his employment for purposes of his own, says at page 359:

"The cases which have arisen upon this subject have from the earliest time been productive of much astute and interesting discussion in Courts of law, and eminent judges have differed widely in their decisions. It has always been a matter of extreme

difficulty to apply the law to the ever-varying facts and circumstances which present themselves. There is, however, no doubt as to the true principle which ought to guide us. It was laid down in Lord Holt's time, and repeatedly since, that wherever the master intrusts a horse or carriage, or anything which may readily be made an implement of mischief, to his servant, to be used by him in furtherance of his master's business, or for the execution of his orders, the master will be responsible for the negligent management of the thing intrusted to the servant, so long as the latter is using it or dealing with it in the ordinary course of his employment. That is undoubtedly a correct statement of the law."

The American view coincides with that expressed by Lord Coleridge. In *McCarthy* v. *Timmins,* 178 Mass., 378, at page 380, Justice Hammond said:

"The well established rule as to the extent of the liability of the master for the act of his servant, so far as material to this case, is that if the act is done without the authority of the master and not for the purpose of executing his orders or doing his work, then he is not responsible, but if it is done in the execution of the authority given by the master and for the purpose of performing what he has directed, then he is responsible, whether the act be negligent or wilful.

"The only trouble is in the application of the rule, and it is not easy to reconcile the cases."

In *Danforth* v. *Fisher,* 75 N. H., 111, 71 Atl. Rep., 535, Justice Young, speaking for the supreme court of New Hampshire, said, at page 111:

"The test to determine whether the master is liable to a stranger for the consequences of his servant's misconduct is to inquire whether the latter was doing what he was employed to do at the time he caused the injury complained of. If he was, the fact that he was not doing it in the way expected is immaterial. \* \* \* But if at the time he did the act which caused the injury he was not acting within the scope of his employment, the master is not liable."

In *Morier* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn., 351, Judge Mitchell stated the doctrine fully and in all its general bearings. He said, at page 352:

"The doctrine of the liability of the master for the wrongful act of his servant is predicated upon the maxims, *respondeat superior* and *qui facit per alium facit per se.* In fact, it rests upon the doctrine of agency. Therefore, the universal test of the master's liability is whether there was authority, express or implied, for doing the act; that is, was it one done in the course and within the scope of the servant's employment? If it be done in the course of and within the scope of the employment, the master will be liable for the act, whether negligent, fraudulent, deceitful, or an act of positive malfeasance. Smith on Master and Servant, 151. But a master is not liable for every wrong which the servant may commit during the continuance of the employment. The liability can only occur when that which is done is within the real or apparent scope of the master's business. It does not arise when the servant steps outside of his employment to do an act for himself, not connected with his master's business. Beyond the scope of his em-

ployment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment. A master is not responsible for any act or omission of his servant which is not connected with the business in which he serves him, and does not happen in the course of his employment. And in determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant *was* at the time engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time when the injury was inflicted, acting for himself, and as his own master, *pro tempore,* the master is not liable. If the servant step aside from his master's business, *for however short a time,* to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities."

The doctrine has also had the consideration of this court and its predecessor, the circuit court, in the following cases: *Rawson, Admr.,* v. *The Olds Motor Works,* 20 C. C., N. S., 182, 27 C. D., 339, decided May 27, 1912; *Nickens* v. *Becker,* decided November 23, 1914. See also *Lima Ry. Co.* v. *Little,* 67 Ohio St., 91, and *White Oak Coal Co.* v. *Rivoux, Admx.,* 88 Ohio St., 18.

In these cases the court held that the master was not liable for injuries resulting from the negligence

of his employe, in charge of his automobile, occurring at a time when the servant had departed from his master's business and was engaged in his own business or in pursuit of his own pleasure.

Thus two principal questions must be determined in all cases of *respondeat superior:*

1.  The existence of the contractual relation as master and servant.

2.  Whether the act or omission, which is the basis of the particular proceeding, was one performed within the scope of that relation.

It may happen, of course, on occasion, that a motor car or other vehicle is operated by a person between whom and the owner there is no actual contract relation of employment, as, for instance, when the car is being driven by a friend upon invitation or by permission. In such case, if the owner is present, the principle of control would govern and the law would imply an agency upon the part of the operator, which would render the owner liable for his acts upon the doctrine of *respondeat superior. Commonwealth* v. *Sherman,* 191 Mass., 439, and *Simeone* v. *Lindsay,* 6 Penn. (22 Del.), 224, 65 Atl. Rep., 778.

And it appears that this liability, upon the same principle, would also extend to occasions when the acts in question were committed or omitted in the owner's absence, if the gratuitous operator was using the car at the time with the owner's sanction, in or about the affairs of the owner. *Herlihy* v. *Smith,* 116 Mass., 265.

But if the operator at such time and under such circumstances was using the machine for his own business or pleasure, he would fall within the class

of borrowers and the owner would not be liable. *Lewis* v. *Amorous,* 3 Ga. App., 50; *Doran* v. *Thomsen,* 79 N. J. L., 99, 66 Atl. Rep., 897, and *Doran* v. *Thomsen,* 76 N. J. L., 754, 19 L. R. A., N. S., 335, 131 Am. St. Rep., 677.

On the facts of this case, was the defendant's wife, in contemplation of law, using the defendant's machine at the time of the accident in or about the affairs of the defendant, or in connection with her own business and in pursuit of her own pleasure?

Under circumstances somewhat similar to those presented by this case this question has been before the courts for determination on several previous occasions. In the case of *Tanzer* v. *Read,* 145 N. Y. Supp., 708, Judge Hotchkiss said on this subject:

"The action is against husband and wife for personal injuries. * * * The important question is as to the husband's liability. The injuries were caused by an automobile belonging to the husband, which had been purchased by him for the mutual pleasure of himself and his family, including his wife, who was privileged to use the same. The husband had provided a chauffeur for the operation of the car, and at the time of the accident this chauffeur was in the car, but he had, shortly before the accident, given up the wheel to the wife, who alone was operating the car when the accident occurred. The use of the car on the occasion in question was purely for the wife's recreation, and not on any business of the husband. In Quilty v. Battie, 135 N. Y. 201, 207, 32 N. E. 47, 48 (17 L. R. A. 521), referring to the legal status of husband and wife and the effect of the statutes of this state, modifying the common law in that regard, the Court of Appeals

said: 'The husband is still the head of the family; the master of the house. He is entitled to the help and companionship of the wife, the control and discipline of his children, and the regulation of the domestic affairs of the household. * * * All such conjugal rights are unimpaired.' I know of no law, however, which compels a husband to afford to his wife either the opportunity or means for recreation, but if he does so, I do not think that, while engaged in such recreation, she is in any sense acting as her husband's agent, even though she utilize his property as a means for her pleasure. * * * When a wife commits a tort while independently engaged in pursuing her own pleasure, I think the husband is protected by the statute, and for this reason the motion made in the husband's behalf, at the conclusion of the plaintiff's case, to dismiss the complaint as to him, should have been granted."

The statute of this state as to the legal status of the husband and wife does not differ materially from that of the New York statute.

In the case of *Doran* v. *Thomsen,* 76 N. J. Law, 754, the trial court instructed the jury as follows:

"If she [defendant's daughter] took that machine out at that time in pursuance of a general authority of her father to take it whenever she pleased for the pleasure of the family and for her own pleasure, for the purpose for which the master bought it, for the purpose for which her father owned it, for the purpose for which he expected her to operate it, then she was the servant of the father. Under those circumstances that was the business for which the father bought the machine."

It was held that this instruction was erroneous because it based the creation of the relation of master and servant upon the purpose which the parent had in mind in acquiring the ownership of the vehicle, and its permissive use by the child, ignoring an essential element in the creation of that status as to third persons, that such use must be in furtherance of and not apart from the master's service and control.

In the case at bar the car was not being used at the time of the accident in connection with the owner's business, but by his wife for her own business and pleasure. We think, therefore, that the defendant's wife occupied the relation of borrower of the defendant's machine. It follows, of course, that the defendant is not liable for an injury caused by her negligence.

We find no error in the record, and the judgment is affirmed.

*Judgment affirmed.*

Winch and Grant, JJ., concur.