## METROPOLITAN CONCRETE CO v VITALE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12994. Decided Sept 18, 1933

Dustin, McKeehan, Merrick, Arter & Stewart, Cleveland, and McAllister Marshall, Cleveland, for plaintiff in error.

Frank Leonetti, for defendant in error.

**OPINION**

By McGILL, J.

Counsel for both parties have submitted able and exhaustive briefs in which are cited many decisions of the courts of Ohio and other jurisdictions. From a perusal of these cases it may be said that the courts are in harmony as to the general principle involved, namely, that in order to hold the master liable the servant must at the time of the injury be in the course of his em-ployment. The difficulty lies in the application of the rule to a particular set of facts.

In the case of **The Lima Railway Company v Little, 67 Oh St 91**, (1902), it is said by Crow, J, at page 100:

"The test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether such act was done by the servant while engaged in the service of, and while acting for the master in the prosecution of the master's business, and such is the rule whether the act complained of be wanton and willful or whether it be merely negligent on the part of the servant or employe. In whatever else they may differ the authorities agree upon the principle that an employer is not liable for the acts of an employe, unless committed while engaged in the service or duties of his employment. * * * A master has the right to select and choose his agents and to determine himself, and assign to the servants so selected, their respective duties, and no assumption by an employe of duties not assigned to him will bring those duties within the course or scope of his employment as defined by the master, and when an act is not within the scope of a servant's employment it cannot be within either the express or implied authorization of the master."

Again, in the case of **Lytle, Admr. v The Union Gas and Electric Company, 24 Oh Ap 314** (1926), (4 Abs 829), it is said by Buchwalter, PJ, at page 316:

"At the time of the accident or the negligence complained of, the servant, to bind the master for his acts, must be engaged on business for the master, within the scope of his authority. He is at that time either serving the master, or on business of his own."

It is said in Babbitt on Motor Vehicle Law, Fourth Edition, §1280, at page 878: "In cases where the deviation is slight and not unusual, the court may, and often will, as a matter of law, determine that the servant was still executing his master's business. In like manner, where the deviation is very marked and unusual, the court may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions. So, the question

must usually depend upon the degree of deviation and all the attendant circumstances. The deviation may be from the route, or from the business of the employer, or from both. The defense of departure is not available where the servant's use of the automobile is consented to by the master; or where, before the accident, the servant had returned from the deviation, and was again acting within the scope of his employer's business."

In the case at bar counsel for Vitale urged that the deviation or departure by Wenger was slight and for the purpose of helping his physical condition.

As to the deviation and his physical condition the following testimony was given by Wenger:

"Q. From Cedar Avenue to the scene of the accident, how long would it take you to drive it, half a minute?

A. About a minute or two.

Q. A minute at the most?

A. Well, no. With this truck it would take a minute and a half to two minutes.

Q. A minute and a half to two minutes. You say you weren't feeling well that afternoon?

A. No, I wasn't, sir.

Q. What was the trouble, stomachache?

A. Stomachache or headache.

Q. And you went over to this friend's house to get something to relieve your stomachache or headache, is that right?

A. I went over after it; yes, sir."

There is nothing in the record to indicate that Wenger was unable to drive his truck directly back to the plant or that he was suffering any specific illness, or that the so-called Kentucky ale would benefit his condition, or that he thought or believed that Kentucky ale would benefit him. On the contrary, the record discloses that he did not know whether he had a headache or stomachache. There is nothing in the record to show that the departure for this purpose had anything to do with the business of the Company. On the contrary, Wenger positively testified that the departure did not have anything to do with the employer's business or with the delivery of concrete, and further, that he was supposed to go back to the plant when he had made his deliveries at Lakeside Hospital.

In McCarthy v Timmins, 178 Mass. 378 (1901), one Scott, the driver of defendant's carriage, was directed to take it to the barn. Instead of taking the most direct route to the stable, Scott turned the horse around and drove in an opposite direction to a saloon where he purchased a drink, some whiskey. The evidence tended to show that he was in the saloon about three minutes, but that while he was there, the horse ran away and came into collision with the plaintiff's team, and the plaintiff was injured. The trial court directed a verdict at the close of plaintiff's evidence. It is said by Hammond, J, at page 381:

"The only trouble is in the application of the rule, and it is not easy to reconcile the cases. Scott had been employed to drive the team in the carriage of passengers, and that work was ended for the day. He was then directed to go to the stables, and there can be no doubt that so long as he drove the team with that end in view, and for that purpose and for no purpose of his own, he was engaged in his master's business, even if he made a detour contrary to the direction of his master. We are not disposed to lay much stress on the fact that he went down Boylston Street rather than Commonwealth Avenue, but when he reached Massachusetts Avenue it is plain that his only purpose in turning southward instead of northward, and going seven hundred and fifty eight feet to Dundee Street, was not only to deviate from the regular way of reaching the stable but was for a purpose of his own, namely, to get a drink. He was upon no errand of his master, and this journey was not for the purpose of getting to the stables even by a circuitous route, or, to use the language of Hoar, J, in Howe v Newmarch, 12 Allen, 49, 57, he was doing an act wholly for a purpose of his own, disregarding the object for which he was employed and not intending by his act to execute it, and not within the scope of his employment. In such case the defendant should not be held answerable."

In the recent case of Hites v Tri-State Baking Company, Inc., decided by the Court of Appeals of the Ninth District of Ohio and cited in Ohio Bar Association Report of June 5th, 1933, at page 175, one Hites received injuries when the wagon on which he was riding was struck by a truck of the Baking Company driven by an employee by the name of Weirich. Weirich had kept the truck over-night at his home in Cuyahoga Falls and the next morning in returning to the Company's office missed one of his overshoes and turned around to retrace his path. While doing so and looking for the lost overshoe the accident occurred. In

the Court of Common Pleas a verdict and judgment was rendered for plaintiff. The Court of Appeals reversed the judgment and entered final judgment for the Baking Company and held that in turning back and directly away from the Company's plant in search for an overshoe which was the exclusive property of Weirich, such action was a departure from the Company's business and that inasmuch as the facts concerning the departure were conceded, final judgment was entered for the Company.

In the instant case Wenger was discharged by the Company immediately when the facts became known. It cannot be said that the master would reasonably anticipate and expressly or impliedly authorize any such act on the part of Wenger which had nothing to do with the business of the Company and could not inure to its benefit.

It is unfortunate that Vitale was injured. His remedy, however, is against Wenger whose negligence caused the damage, and, in fact, the record discloses a suit pending against Wenger. Certainly the Company is not liable when Wenger deviated from his work on an excursion of his own and one entirely foreign to the business of the Company.

In view of the conceded facts in this case and the testimony of Wenger himself, it is clear to a majority of this court that Wenger at the time of the accident was not in the course of his employment and that the facts and circumstances are such that reasonable minds could not well differ. Accordingly a majority of this court is of the opinion that the court below erred in refusing to direct a verdict in favor of the Company at the close of all the evidence, and a final judgment will be entered in favor of the plaintiff in error.

LIEGHLEY, PJ, concurs.
LEVINE, J, dissents.