C. F. R. OGILBY et al., Trustees, trading as Byron S. Adams, Appellants,

v.

Joseph A. ESKEY, Appellee.

No. 1739.

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 6, 1956.

Decided March 20, 1956.

J. Joseph Barse, Washington, D. C., with whom H. Mason Welch, John R. Daily, and J. Harry Welch, Washington, D. C., were on the brief, for appellants.

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Plaintiff Eskey sued the operators of a printing business for an assault committed upon him by one of their employees. A jury awarded him damages and defendants bring this appeal.

■ Since our first question is whether defendants were entitled to a directed verdict, we must consider the evidence in the light of familiar and accepted tests. The substance of plaintiff's testimony was that he was superintendent of a downtown office building, and that one morning as he was standing in the lobby acting as elevator starter, he saw a messenger (later identified as Shields, a seventeen-year-old messenger employed by defendants) park his bicycle in such a way as to block the stoop or entrance to the building. He called on Shields to move the bicycle because people entering or leaving the building might trip over it. Shields at first refused and cursed at Eskey; but he did move the bicycle and on reentering the building again cursed at Eskey. Eskey started to follow Shields into an elevator, his purpose being to see where he was going and learn by whom he was employed so that he could report the incident to the employer. Though Eskey then said nothing to Shields and did nothing to him, Shields struck him a number of times in the eye and on top of his head. Shields denied striking Eskey and said he was only trying to get away from him, and that Eskey had "elbowed" him in the stomach and grabbed him by the neck.

It was shown that at the time of the altercation Shields was entering the building for the purpose of making a delivery for his employers.

■ We rule that the trial court was right in deciding that the case should be submitted to the jury. In principle this case is the same as Dilli v. Johnson, 71 App.D.C. 139, 107 F.2d 669, 670. There

the plaintiff had ordered hamburger sandwiches at a counter in defendant's restaurant, and when they were served by defendant's employee he noticed that one of them contained unground meat and asked that the employee exchange it. The employee refused, telling plaintiff he needn't eat it if he didn't like it, and when plaintiff wrapped it up and threatened to show it to the proprietor the employee severely assaulted him. The United States Court of Appeals ruled that an employer may be responsible for an assault committed by an employee while acting within the scope of his employment, even though he may have acted wantonly and contrary to the employer's interests, citing among other cases Axman v. Washington Gaslight Co., 38 App.D.C. 150. The court pointed out that there had been no prior grievance or personal animosity or even an acquaintance between the employee and the plaintiff, and that this negated any theory of personal revenge. Speaking through Chief Judge Groner the court said: " * * * it cannot be contended that, in serving the food and receiving the complaint, the agent was not promoting the object of his employment. With just as little reason can it be said that he broke the connection between master and servant when he allowed his own resentment and anger to lead to an assault on the customer. A line of separation so vague as this would emphasize the shadow rather than the substance."

We are satisfied that those rulings govern this case, the only slight difference being that there the employee had some managerial authority. Here, as in that case, there was no prior grievance, animosity, or even acquaintance between plaintiff and the offending employee, and no basis for a claim of personal revenge which would operate to relieve the employer of liability for the tort. Here, as in that case, although the employee may have been acting wantonly and contrary to his employer's interests, it is still true that he committed an assault while engaged on the master's business. Here, too, it must be said that the employer may not escape liability either because of the employee's infirmity of temperament or because while under the influence of anger or passion he went beyond the ordinary line of duty and inflicted the injury complained of.

A much more recent decision by the same court also firmly supports what we have said. Tarman v. Southard, 92 U.S.App. D.C. 297, 205 F.2d 705. There a taxicab driver and his passenger had a dispute over the fare, and the driver followed the passenger from the cab and assaulted him. The court affirmed a verdict and judgment against the taxicab company and quoted with approval from the Dilli case, supra, as to an employer's responsibility in situations like this.

Appellants place their principal reliance on our decision in Great A & P Tea Co., Inc., v. Aveilhe, D.C.Mun.App., 116 A.2d 162. There two grocery clerks were amusing themselves in laughter and playfulness, and one grabbed the other by the shoulder and caused him to fall backward against a customer. We made a ruling of no liability because it seemed clear that there was a departure from the master's business, that there was no motive other than a personal one in the antics of the clerks, and that the injury to the customer was the result of an independent trespass for which the principal was not answerable. We are clear in our view that the case just cited does not govern the situation before us and that the controlling principles are stated in the Dilli and Tarman decisions cited above.

Plaintiff was permitted to testify that he had a fused spine, and appellant says this was error. We see no merit in the contention. One of the principal issues at the trial was whether plaintiff or Shields was the aggressor. Plaintiff sought to show that he could not have been the aggressor and was unable to engage in a fight because his spine had been surgically fused. Such evidence was clearly relevant. Moreover, counsel made it plain that plaintiff was not claiming that the assault had injured his spine or aggravated the existing condition. And the judge was at pains to

explain this to the jury and limit the scope and purpose of the testimony. The evidence was properly admitted.

Another assignment of error criticizes certain parts of the instructions to the jury. Our study of the charge satisfies us that it was fair and accurate. On the basic question of liability the judge instructed the jury correctly and in conformity with the law as it was spelled out in the decisions we have discussed above.

Affirmed.